**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION**

COUNTY OF ALBANY, NEW YORK,

        *Plaintiff,*

    v.

ELI LILLY AND COMPANY, *et al.*

        *Defendants.*

Case No. 1-22-cv-00981-DNH-CFH

**UNITEDHEALTH GROUP, INC., OPTUM, INC., OPTUMRX INC., AND
OPTUMINSIGHT, INC.'S MEMORANDUM OF LAW SUPPORTING THEIR
<u>RULE 12(b)(6) MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM</u>**

## <u>TABLE OF CONTENTS</u>

Page(s)

INTRODUCTION ...................................................................................................................1

THE COUNTY'S ALLEGATIONS ........................................................................................3

LEGAL STANDARD ..............................................................................................................4

ARGUMENT ...........................................................................................................................5

I.   THE COUNTY FAILS TO ALLEGE A RICO CONSPIRACY CLAIM
     AGAINST OPTUMRX. ...............................................................................................5

II.  THE COURT SHOULD DISMISS OPTUMRX'S CORPORATE PARENTS
     AND AFFILIATE ENTITIES. ...................................................................................10

III. CERTAIN DEFECTS IDENTIFIED BY THE OTHER DEFENDANTS ALSO
     DEFEAT THE COUNTY'S CLAIM AGAINST OPTUMRX. .....................................12

CONCLUSION ......................................................................................................................12

CERTIFICATE OF SERVICE ..............................................................................................14

**<u>TABLE OF AUTHORITIES</u>**

**Page(s)**

**Cases**

*Abbott Labs. v. Adelphia Supply USA*,
  No. 15-CV-5826 (CBA) (LB), 2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. Jan. 4,
  2017) ....................................................................................................................................5, 9

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ..................................................................................................................4

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................4, 7, 9, 10

*Bldg. Indus. Fund v. Loc. Union No. 3, IBEW*,
  992 F. Supp. 162 (E.D.N.Y. 1996) .......................................................................................9, 10

*Capone v. Goldman*,
  No. CV 09-1208 (SJF) (AKT), 2010 U.S. Dist. LEXIS 165642 (E.D.N.Y.
  Mar. 28, 2010) ...........................................................................................................................6

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999) ...................................................................................................5, 6

*In re EpiPen Direct Purchaser Litig.*,
  No. 20-cv-0827, 2021 U.S. Dist. LEXIS 8362 (D. Minn. Jan. 15, 2021) ...............................11

*Miss. ex rel. Fitch v. Eli Lilly & Co.*,
  No. 21-cv-00674 (S.D. Miss. Aug. 15, 2022), slip op. ...........................................................11

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977) ................................................................................................................12

*Pearson v. Component Tech. Corp.*,
  247 F.3d 471 (3d Cir. 2001) ...................................................................................................10

*Poole v. Bendixen*,
  No. 20-CV-0697, 2021 U.S. Dist. LEXIS 159445 (N.D.N.Y. Aug. 24, 2021) .......................7

*Salinas v. United States*,
  522 U.S. 52 (1997) .................................................................................................................5, 6

*United States v. Bestfoods*,
  524 U.S. 51 (1998) ................................................................................................................10

*United States v. Maldonado-Rivera*,
  922 F.2d 934 (2d Cir. 1990) ..................................................................................................10

*United States v. Neapolitan*,
  791 F.2d 489 (7th Cir. 1986) ............................................................................6, 8

*United States v. Sessa*,
  125 F.3d 68 (2d Cir. 1997)....................................................................................5

*United States v. Viola*,
  35 F.3d 37 (2d Cir. 1994)..................................................................................6, 8

*Wood v. GMC*,
  No. 08 CV 5224 (PKC) (AKT), 2015 U.S. Dist. LEXIS 37782 (E.D.N.Y. Mar.
  25, 2015) .........................................................................................................5, 8

## INTRODUCTION

Plaintiff the County of Albany, New York filed this lawsuit against three insulin manufacturers (Eli Lilly, Sanofi, and Novo Nordisk), and three pharmacy benefit managers (PBMs) (Express Scripts, CVS Caremark, and OptumRx). But OptumRx[1] is not like the other defendants. The County alleges that it paid for insulin products manufactured by the three manufacturer defendants. *See* Amended Complaint (Compl.), ECF No. 137, ¶ 403. And it alleges that it did so under a self-funded plan that received pharmacy benefit services from two of the PBM Defendants—Express Scripts and CVS Caremark. *Id.* ¶ 404. The County alleges that it "paid Express Scripts and CVS Caremark directly for the at-issue drugs" at prices that "Express Scripts and CVS Caremark set . . . in coordination with the Manufacturer Defendants." *Id.* ¶ 409. But the County does not make similar allegations about OptumRx. The County does not allege that OptumRx has ever provided services to the County, ever sold insulin to the County, or ever contracted with the County about insulin prices. The County does not allege any relationship (direct or indirect) with OptumRx.

Because the County has no relationship with OptumRx, it is not surprising that the County does not name OptumRx in its substantive counts under RICO (Count 1), New York's General Business Law (Count 3), or unjust enrichment (Count 4). Nonetheless, the County tries to sweep OptumRx into this lawsuit by naming it as a defendant in the County's RICO conspiracy claim

---

[1] We use "OptumRx" in this brief to refer to Defendant OptumRx, Inc. In its complaint, the County improperly uses "OptumRx" to refer collectively to four distinct corporate entities: UnitedHealth Group, Inc., OptumRx, Inc., Optum, Inc., and OptumInsight, Inc. *See* Compl. ¶ 197. And it then merges those four entities with eleven other defendants under the label "PBM Defendants," even though many of those entities do not provide PBM services. Compl. ¶ 5. Although that sort of group pleading is improper, the result of the County's group pleading is that the defects in the claims against OptumRx, Inc. (the only defendant among the United and Optum family of defendants that provides PBM services) also defeat the claims against UnitedHealth Group, Optum, Inc., and OptumInsight.

(Count 2). But the County's own allegations foreclose it from asserting a RICO conspiracy claim against OptumRx.

To state a RICO conspiracy claim, a plaintiff must show that each named defendant agreed (i) to form a RICO *enterprise*, (ii) to associate itself with that *enterprise*, and (iii) to the commission of at least two predicate acts of racketeering in furtherance of the *enterprise*'s affairs. What is clear, then, is that a RICO conspiracy claim cannot proceed unless the plaintiff first identifies an alleged enterprise at the heart of the purported conspiracy. The County's claim against OptumRx crumbles at that first step.

In its complaint, the County alleges six bilateral enterprises, but OptumRx is not a member of any of them. Instead, each allegedly involves one insulin manufacturer and either Express Scripts or CVS Caremark. The six bilateral RICO enterprises alleged in the complaint look like this:



Compl. ¶ 515.

Not only is OptumRx not a member of any alleged RICO enterprise, the County offers no factual allegations that OptumRx agreed to associate with those enterprises or participate in their affairs through a pattern of racketeering activity. At most, the County alleges that OptumRx, like the other PBMs, negotiated with manufacturers for rebates and sold insulins through its mail-order pharmacy. But an allegation that OptumRx had a separate, independent business relationship with

an insulin manufacturer is not a factual allegation that OptumRx conspired with a manufacturer to

form, associate with, or further a RICO enterprise between that manufacturer and some other PBM.

Without factual allegations plausibly showing that OptumRx agreed to form and participate in one

of the six bilateral RICO enterprises alleged in the complaint, the County's RICO conspiracy claim

against OptumRx must be dismissed.

The County's RICO conspiracy claim against UnitedHealth Group, Optum, Inc., and

OptumInsight should be dismissed for an independent reason: The County does not explain their

involvement in any of the challenged activities. Instead, the County has named those entities as

defendants only because of their corporate affiliation with OptumRx, which is never enough.

## THE COUNTY'S ALLEGATIONS

Eli Lilly, Novo Nordisk, and Sanofi are pharmaceutical companies that manufacture and

sell prescription drugs, including insulin and other diabetes medications. Compl. ¶ 4. They also set

the list prices for their products. *See e.g.*, *id.* ¶¶ 12, 14, 17.

Express Scripts, CVS Caremark, and OptumRx are PBMs that contract with various clients

(health plan sponsors, employers, unions, trusts, and government agencies) to provide pharmacy

care services. One service that PBMs offer their clients is developing lists of drugs called

"formularies" that their clients can accept, reject, or modify to determine whether and to what

extent the clients cover the cost of certain medications for their members. *Id.* ¶¶ 8–9. PBMs also

negotiate with drug manufacturers for rebates to lower the cost of prescription medicines. *Id.* ¶ 275.

The County alleges that two of the PBMs (Express Scripts and CVS Caremark) "provide[d]

PBM services to the County including developing and offering formularies for [the County's]

prescription plan, constructing and managing [the County's] pharmacy network (which included

the [Express Scripts and CVS Caremark's retail and mail order pharmacies], processing pharmacy

claims, and providing mail-order pharmacy services" to the County. Compl. ¶ 409. The County

also alleges that, in providing those services, Defendant "Express Scripts and Defendant CVS Caremark set the amount [the County] paid in coordination with Manufacturer Defendants" and that the County "paid Express Scripts and CVS Caremark directly for the at-issue drugs." *Id.*

The County does not make those allegations (or similar allegations) against OptumRx. It does not allege that OptumRx has ever provided PBM services to the County, that OptumRx was responsible for setting insulin prices paid by the County, or that the County has ever paid OptumRx for insulin.

The County presses substantive RICO claims against the three insulin manufacturers, Express Scripts, and CVS Caremark. Compl. ¶ 509. In support of those claims, the County alleges six distinct RICO enterprises, each involving one insulin manufacturer and either Express Scripts or CVS Caremark. *Id.* ¶ 513; *see also* Illustration on page 2 above. The County does not name OptumRx in its substantive RICO count or allege that OptumRx joined any alleged RICO enterprise. The County also does not name OptumRx as a defendant for its claims under New York's General Business Law (*id.* ¶¶ 580–81) or for unjust enrichment (*id.* ¶¶ 593–601). Instead, the County names OptumRx only for Count 2, which alleges a RICO conspiracy.

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In a case alleging conspiracy, the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft 'to sho[w] that the pleader is entitled to relief.'" *Twombly,* 550 U.S. at 557 (quoting Fed. R. Civ. P. 8).

## ARGUMENT

### I.   THE COUNTY FAILS TO ALLEGE A RICO CONSPIRACY CLAIM AGAINST OPTUMRX.

The County's RICO conspiracy claim against OptumRx fails because the County has not alleged facts plausibly suggesting that OptumRx agreed to form, associate with, or participate in the affairs of a RICO enterprise through a pattern of racketeering activity.[2]

To establish a RICO conspiracy, a plaintiff "necessarily ha[s] to establish that the defendant agreed with his criminal associates to *form [a] RICO enterprise*, agreed to *associate himself with that enterprise* and agreed to commit two predicate acts in furtherance of a pattern of racketeering activity *in connection with the enterprise*." *United States v. Sessa*, 125 F.3d 68, 71 (2d Cir. 1997) (quoting *United States v. Benevento*, 836 F.2d 60, 73 (2d Cir. 1987)) (emphasis added). That standard makes clear that a defendant cannot be held liable for RICO conspiracy unless there is some nexus to an identified RICO enterprise. *See Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 244 (2d Cir. 1999) ("[Plaintiff] necessarily had to establish that the [] Defendants *agreed to form and associate themselves with a RICO enterprise* and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity *in connection with the enterprise*.") (emphasis added); *Wood v. GMC*, No. 08 CV 5224 (PKC) (AKT), 2015 U.S. Dist.

---

[2] The defendants named in the County's substantive RICO count (Count 1) have each filed motions to dismiss explaining why the County's RICO claims are defective. *See* CVS Caremark Memorandum of Law; Express Scripts Memorandum of Law; Manufacturer Defs. Memorandum of Law. OptumRx agrees with those arguments and incorporates them in this brief. If the Court agrees that the County has not stated a substantive RICO claim against the other named defendants, then the County's RICO conspiracy claim against OptumRx necessarily fails. *See Salinas v. United States*, 522 U.S. 52, 65 (1997) (A RICO "conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense."); *Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2017 U.S. Dist. LEXIS 1007, at *34 (E.D.N.Y. Jan. 4, 2017) (dismissing RICO conspiracy claim because "[t]he facts as alleged do not 'satisfy all of the elements of a substantive criminal [RICO] offense.'" (quoting *Salinas*, 522 U.S. at 65)).

LEXIS 37782, at *26 (E.D.N.Y. Mar. 25, 2015) (same); *United States v. Viola*, 35 F.3d 37, 43 (2d Cir. 1994) (A plaintiff must show that the defendant agreed to "participate, directly or indirectly, *in the conduct of [a RICO] enterprise's affairs* through a pattern of racketeering activity") (emphasis added), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52, 65 (1997).[3]

Requiring an agreement to participate in the affairs of a specific RICO enterprise ensures that there are not RICO conspiracy claims against every defendant accused of engaging in racketeering activity. In fact, a defendant will not be liable for RICO conspiracy even if it "agrees to the commission of two criminal acts" if it "does not consent to the involvement of an enterprise." *United States v. Neapolitan*, 791 F.2d 489, 499 (7th Cir. 1986). Likewise, a RICO conspiracy claim cannot be predicated on a defendant's "incidental or tenuous association with the enterprise and its members." *Viola*, 35 F.3d at 44.

Here, the County alleges six distinct RICO enterprises—each representing a separate vertical relationship between one insulin manufacturer and either Express Scripts or CVS Caremark. *See* Compl. ¶ 515; *see also* RICO Statement, ECF No. 146 at 22. But the County does not allege that OptumRx agreed to associate with those putative enterprises or participate in their

---

[3] The Second Circuit in *Viola* separately held that establishing a RICO conspiracy required proof that each defendant agreed to personally commit predicate acts of racketeering. *Viola*, 35 F.3d at 43. In *Salinas*, the Supreme Court abrogated that aspect of *Viola*. 522 U.S. at 65. *See, e.g.*, *Capone v. Goldman*, No. CV 09-1208 (SJF) (AKT), 2010 U.S. Dist. LEXIS 165642, at *17 n.5 (E.D.N.Y. Mar. 28, 2010) ("It should be noted that one particular portion of *Viola* has subsequently been abrogated by the Supreme Court's decision in *Salinas*. . . . . *Salinas* stands for the proposition that Section 1962(d) does not require proof that each co-conspirator agreed to commit two predicate acts."). But *Salinas* did not eliminate the requirement that a RICO conspiracy requires "an agreement to conduct or participate, directly or indirectly, in the conduct of [a RICO] enterprise's affairs . . . ." (*Viola*, 35 F.3d at 43), nor did it eliminate the requirement that the Defendants, *collectively*, "agreed to commit two predicate acts in furtherance of a pattern of racketeering activity *in connection with the enterprise*." *Cofacredit*, 187 F.3d at 244 (emphasis added).

affairs through a pattern of racketeering. Instead, the County offers nothing more than a conclusory allegation that OptumRx "conspired with [the six alleged] enterprises in violation of 18 U.S.C. § 1962(d)." RICO Statement at 26; Compl. ¶ 571.[4] The County's conclusory allegation that OptumRx "conspired with" the enterprises identified in the complaint is not enough. *Twombly*, 550 U.S. at 555 (alleging a conspiracy "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").

To allege that a defendant conspired to participate in an enterprise's affairs, the plaintiff must describe the agreement "specifically" with descriptive allegations showing the "factual nature of [the] alleged . . . agreement, the particular Defendants who participated in the planning of individual predicate acts, or any particular facts such as dates, times, or locations of meetings where such an agreement was discussed." *Poole v. Bendixen*, No. 20-CV-0697 (GTS/ATB), 2021 U.S. Dist. LEXIS 159445, at *38 (N.D.N.Y. Aug. 24, 2021). Here, that means the County must allege facts specifically demonstrating that OptumRx agreed to associate with the "Eli-Lilly-CVS Caremark Enterprise" (Compl. ¶ 515(a)), the "Novo Nordisk-Express Scripts Enterprise (*id.* ¶ 505(d)), or with one of the four other alleged bilateral enterprises involving an insulin manufacturer and one of the other two PBMs.

Those allegations don't exist. At most, the County alleges that OptumRx executed rebate contracts with each of the manufacturer defendants regarding "Manufacturer [Rebate] Payments paid by the Manufacturer Defendants *to OptumRx*, as well as agreements related to the

---

[4] *See Oriska Ins. Co. v. Avalon Gardens Rehab. & Health Care Ctr., LLC*, No. 6:18-CV-1030, 2019 U.S. Dist. LEXIS 149953, at *8 n.5 (N.D.N.Y. Sep. 4, 2019) (referring to statements in Plaintiff's RICO statement as "factual allegations"); *Pier Connection v. Lakhani*, 907 F. Supp. 72, 74 n.4 (S.D.N.Y. 1995) (explaining that "[f]or purposes of th[e] motion [to dismiss], the factual allegations contained within Plaintiffs' RICO Statement . . . are deemed to be incorporated into the Complaint.").

Manufacturers' at-issue drugs sold *through OptumRx's mail-order pharmacies*." Compl. ¶ 210. But rebate payments from Eli Lilly, Novo Nordisk, or Sanofi to OptumRx, or OptumRx's shipping insulin products through its mail-order pharmacy show only that OptumRx had a "tenuous association with" businesses who are separately alleged to be members of an enterprise. *Viola*, 35 F.3d at 44. That does not establish that OptumRx separately agreed to associate with bilateral enterprises that those manufacturers separately formed with Express Scripts or CVS Caremark.

The defect in the County's RICO conspiracy claim against OptumRx is amplified by the County's RICO Statement. The County was required to "describe in detail the alleged conspiracy." RICO Statement at 30. But the County fails to describe any "agreement." Instead, the County lists nine "specific overt acts" that OptumRx allegedly committed "in furtherance of the scheme." *Id.* at 30–31. But alleging that OptumRx committed overt acts is not the same as alleging that OptumRx *agreed with other defendants* to engage in those activities, let alone that it agreed to do so in furtherance of RICO enterprises between insulin manufacturers and other PBMs. *Wood*, 2015 U.S. Dist. LEXIS 37782, at *26 ("[A] plaintiff must allege that the defendants 'agreed to form and associate themselves with a RICO enterprise and that they agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise.'") (quoting *Cofacredit*, 187 F.3d at 244); *Neapolitan*, 791 F.2d at 499 (holding that "agree[ing] to the commission of two criminal acts" is insufficient to support a RICO conspiracy claim absent proof that the defendant also "consent[ed] to the involvement of an enterprise").

If anything, the overt acts that the County alleges undermine its conclusory assertion that OptumRx's business activities were in furtherance of the alleged enterprises. The alleged "overt acts" fall into three categories: (1) negotiating and entering into rebate agreements with Eli Lilly and Sanofi (RICO Statement at 30–31, ¶¶ 14(i) and (iii)); (2) public statements in press releases,

congressional hearings, and annual reports to the SEC (*id.* ¶¶ 14(ii) and (iv)–(viii)); and (3) filling prescriptions for the at-issue medications through OptumRx's mail-order-pharmacy services (*id.* ¶ 14(ix)). But all of those are activities that OptumRx would reasonably be expected to engage in to advance its own independent interests even absent a conspiratorial agreement.[5] *See Abbott Labs*, 2017 U.S. Dist. LEXIS 1007, at \*14 (finding that "no alleged facts support an inference that the entities were acting in any way but in their own independent interests," and dismissing the RICO conspiracy claims). The County alleges no facts supporting a plausible inference that those actions were the product of an agreement to further RICO enterprises comprised of manufacturers and the other PBMs, let alone that those actions are independent evidence that an agreement exists in the first instance.

Even giving undue credit to the County's allegations, the best the County can allege is that OptumRx stood to benefit from increased rebates in the same way that the County's PBMs (Express Scripts and CVS) stood to benefit from increased rebates.[6] But "[t]he essence of a conspiracy is not simply a commonality of interest." *Bldg. Indus. Fund v. Loc. Union No. 3, IBEW*, 992 F. Supp. 162, 186 (E.D.N.Y. 1996); *see also Twombly*, 550 U.S. at 556-57 (explaining that "lawful parallel conduct fails to bespeak unlawful agreement," and that, on its own, "parallel conduct does not suggest conspiracy," nor does "a conclusory allegation of agreement at some

---

[5] The County's original complaint and RICO statement raised the same three categories of overt acts. *See* Complaint, ECF No. 1 at ¶¶ 565–72; RICO Statement, ECF No. 63 at 28–29. Despite OptumRx pointing out the deficiencies in its earlier motion to dismiss, the County's amendments simply add four new examples that fall under the same defective categories—each of which reflect OptumRx advancing its own independent business interests. None of those statements come close to supporting the existence of a conspiratorial agreement to form or further a RICO enterprise.

[6] As explained in both Express Scripts' and CVS Caremark's separate motions to dismiss, the various contracts governing PBM services provided to the County from 2006 to the present have all provided that the County was entitled to received 100% of all rebates paid based on the County's prescription-drug utilization. *See* CVS Caremark Memorandum of Law; Express Scripts Memorandum of Law.

unidentified point . . . supply facts adequate to show illegality."). Rather, the essence of a conspiracy is "*an agreement* by two or more people to accomplish a specific illegal objective." *Id.* (emphasis added); *see also United States v. Maldonado-Rivera*, 922 F.2d 934, 963 (2d Cir. 1990) ("The essence of any conspiracy is, of course, agreement . . . ."); *Twombly*, 550 U.S. at 556–57 (explaining that "the crucial question is whether the challenged . . . conduct stems from independent decision or from an agreement, tacit or express," and that there must be "enough fact[s] to raise a reasonable expectation that discovery will reveal *evidence of illegal agreement*."). The County alleges no facts showing that OptumRx agreed to form, associate with, or further the RICO enterprises alleged in the complaint through a pattern of racketeering, so its RICO conspiracy claim against OptumRx should be dismissed.

## II. THE COURT SHOULD DISMISS OPTUMRX'S CORPORATE PARENTS AND AFFILIATE ENTITIES.

OptumRx's corporate parents (UHG and Optum, Inc.) and corporate affiliate (OptumInsight, Inc.) should be dismissed for an independent reason: There are no allegations showing that they had any involvement in conduct challenged in this case.

The County does not plausibly allege misconduct by OptumRx's corporate parents; it claims only that they own OptumRx, share interlocking directorships, direct overarching company policy, and profit from the alleged Manufacturer/PBM conspiracy. *See, e.g.*, Compl. ¶ 196. "It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and quotation marks omitted). "[M]ere ownership of a subsidiary does not justify the imposition of liability on the parent. Nor will liability be imposed on the parent corporation merely because directors of the parent corporation also serve as directors of the subsidiary." *Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (citing *United*

*States v. Bestfoods*, 524 U.S. 51, 69 (1998); *American Bell Inc. v. Federation of Tel. Workers of Pa.*, 736 F.2d 879, 887 (3d Cir. 1984)).

The County alleges no facts demonstrating that OptumRx is the alter ego of its corporate parents or any other reason they are proper defendants in this case. Courts reviewing nearly identical allegations against OptumRx's corporate parents have dismissed them. *See, e.g.*, *In re EpiPen Direct Purchaser Litig.*, No. 20-cv-0827 (ECT/TNL), 2021 U.S. Dist. LEXIS 8362, at *65–66 (D. Minn. Jan. 15, 2021) (dismissing claims against OptumRx's corporate parents because Plaintiff failed to demonstrate "a connection" between the corporate parents and a RICO conspiracy related to EpiPen rebates); *Miss. ex rel. Fitch v. Eli Lilly & Co.*, No. 21-cv-00674 (S.D. Miss. Aug. 15, 2022), slip op. at 14–16 (concluding that plaintiff failed to allege facts supporting veil piercing as to OptumRx's parents and affiliates in lawsuit alleging conspiracy related to insulin pricing). This Court should do the same.

The County's conclusory allegations against affiliate OptumInsight, Inc. are also insufficient. The County alleges that OptumInsight is an "integral part of the Insulin Pricing Scheme" but supplies no factual basis for that allegation, alleging only that OptumInsight "coordinated directly with the Manufacturer Defendants in furtherance of the conspiracy" and that OptumRx "used" OptumInsight to "compile[], analyze[], and share[]" data in furtherance of the alleged scheme. Compl. ¶¶ 195, 326. Those conclusory allegations fail to plausibly allege any misconduct by OptumInsight.

The County has not stated a plausible claim for relief against OptumRx's corporate parents (UHG and Optum, Inc.) or its affiliate (OptumInsight). Accordingly, the Court should dismiss all claims against those Defendants.

### III. CERTAIN DEFECTS IDENTIFIED BY THE OTHER DEFENDANTS ALSO DEFEAT THE COUNTY'S CLAIM AGAINST OPTUMRX.

The other defendants in this action have filed motions to dismiss arguing, among other things, that (i) the County's claims are barred by the statute of limitations because the County has known or should have known about its claims since no later than February 2017; and (ii) the County, as an indirect purchaser of insulins, lacks standing to pursue its claims under *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745–46 (1977). OptumRx will not repeat those arguments, which are raised in at least three motion-to-dismiss briefs filed by other defendants. But if the Court agrees that the County's claims are time-barred or that the County lacks standing as an indirect purchaser, those defects also foreclose the claim against OptumRx.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Court should dismiss all claims asserted against OptumRx, Inc. Optum, Inc., UHG, and OptumInsight.

Dated:      April 14, 2023

                                        Respectfully submitted,

                                        **ALSTON & BIRD LLP**

                                        By:   /s/ *Karl Geercken*
                                               Karl Geercken (Bar Roll No. 515873)
                                               90 Park Avenue
                                               New York, NY 10016-1387
                                               Tel: (212) 210-9471
                                               Fax: (212) 922-3931
                                               karl.geercken@alston.com

                                               Brian D. Boone, *pro hac vice*
                                               101 S. Tryon Street, Suite 4000
                                               Charlotte, NC 28280
                                               (704) 444-1000
                                               brian.boone@alston.com

D. Andrew Hatchett, *pro hac vice*
1201 W. Peachtree Street
Atlanta, GA 30309
(404) 8811-7000
andrew.hatchett@alston.com

*Attorneys for Defendants UnitedHealth Group,
Inc., Optum, Inc., OptumRx, Inc. and
OptumInsight, Inc.*

13

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on April 14, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                            /s/ *Karl Geercken*