**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**ALBANY DIVISION**

COUNTY OF ALBANY, NEW YORK,

        *Plaintiff*,

    v.

ELI LILLY AND COMPANY; NOVO NORDISK
INC.; SANOFI-AVENTIS U.S. LLC;
EVERNORTH HEALTH, INC. (FORMERLY
EXPRESS SCRIPTS HOLDING COMPANY);
EXPRESS SCRIPTS, INC.; EXPRESS SCRIPTS
ADMINISTRATORS, LLC; MEDCO HEALTH
SOLUTIONS, INC.; ESI MAIL PHARMACY
SERVICES, INC.; EXPRESS SCRIPTS
PHARMACY, INC.; CVS HEALTH
CORPORATION; CVS PHARMACY, INC;
CAREMARK RX, LLC; CAREMARK PCS
HEALTH, LLC; CAREMARK, LLC;
UNITEDHEALTH GROUP, INC.; OPTUM, INC.;
OPTUMRX INC.; OPTUMINSIGHT, INC.,

        *Defendants.*

Case No. 1:22-cv-00981-DNH-CFH

**MANUFACTURER DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO DISMISS THE AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 3

I. The Distribution of, and Payment for, Branded Prescription Drugs.................................... 3

II. The Alleged "Scheme" ...................................................................................... 5

ARGUMENT ............................................................................................................ 7

I. Albany County's Claims Are All Barred by Statutes of Limitations ................................. 7

    A. The County's Claims Have Expired ............................................................. 8

        1. Legal Standards for the Relevant Statutes of Limitations ......................... 8

        2. The County Was Fully Aware of the So-Called Scheme .......................... 9

    B. The Amended Complaint's Conclusory Invocations of Tolling Doctrines Are Unavailing ......................................................................................... 14

        1. Discovery Rule Tolling Does Not Apply................................................ 15

        2. The County Has Not Established Fraudulent Concealment ..................... 15

        3. Equitable Estoppel Is Unavailable ........................................................ 17

        4. The Continuing Violations Theory Is Inapplicable ................................. 19

II. The County's RICO Claims Fail on the Merits .............................................................. 20

    A. The Indirect Purchaser Rule Bars the County's RICO Claims Against the Manufacturer Defendants.................................................................... 20

    B. The County Fails To Allege Any Cognizable RICO Injury ................................. 23

    C. The County Fails To Adequately Plead Predicate Acts (Mail or Wire Fraud)..... 25

        1. The Amended Complaint Fails To Plead Any Fraud.............................. 25

        2. The Amended Complaint Fails To Plead Fraud with Particularity.......... 27

    D. The County Fails To Plead that the Manufacturer Defendants Operated or Managed a RICO Enterprise................................................................. 28

i

E.      The County's RICO Conspiracy Claim Fails Because the Underlying RICO
        Allegations Fail ........................................................................................................... 30

III.    Albany County Fails To State a GBL Claim .................................................................... 30

A.      The Amended Complaint Fails To Allege Misleading Conduct that Caused the
        County Any Injury ........................................................................................................ 31

B.      Albany County's GBL Claim Fails Because the County Only Asserts Derivative
        Injuries ......................................................................................................................... 33

C.      The Amended Complaint Fails To Allege Any Deceptive Acts Occurred in New
        York ............................................................................................................................. 34

IV.     The Unjust Enrichment Claim Fails Because a Contract Governs the Subject of the
        Dispute and the County Did Not Directly Benefit the Manufacturer Defendants ............ 34

CONCLUSION ................................................................................................................................ 35

# TABLE OF AUTHORITIES

Page

**Cases**

*421-A Tenants Ass'n. Inc. v. 125 Court St. LLC*,
2017 WL 6612933 (E.D.N.Y. Nov. 2, 2017)................................................................. 9, 10, 11

*7 W. 57th St. Realty Co. v. Citigroup, Inc.*,
2015 WL 1514539 (S.D.N.Y. Mar. 31, 2015) ......................................................... 14

*Abbott Labs. v. Adelphia Supply USA*,
2017 WL 57802 (E.D.N.Y. Jan. 4. 2017) ............................................................. 29

*Argabright v. Rheem Mfg. Co.*,
201 F. Supp. 3d 578 (D.N.J. 2016) ....................................................................... 33

*Basso v. New York Univ.*,
2018 WL 2694430 (S.D.N.Y. June 5, 2018) ......................................................... 18

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
818 N.E.2d 1140 (N.Y. 2004)......................................................................... 33, 34

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*,
36 F. Supp. 2d 560 (E.D.N.Y. 1999) .................................................................... 23

*City of Miami v. Eli Lilly & Co.*,
2022 WL 198028 (S.D. Fla. Jan. 21, 2022) ......................................................... 35

*City of New York v. Smokes-Spirits.com, Inc.*,
911 N.E.2d 834 (N.Y. 2009)............................................................... 31, 32, 33, 34

*Clark-Fitzpatrick, Inc. v. L.I.R.R.*,
516 N.E.2d 190 (N.Y. 1987)................................................................................. 34

*Cupersmith v. Piaker & Lyons P.C.*,
2016 WL 5394712 (N.D.N.Y. Sept. 27, 2016) ..................................................... 20

*Dubai Islamic Bank v. Citibank, N.A.*,
256 F. Supp. 2d 158 (S.D.N.Y. 2003) .................................................................. 29

*DuBuisson v. Nat'l Union Fire Ins. of Pitt.*,
2021 WL 3141672 (S.D.N.Y. July 26, 2021) ....................................................... 20

*Dwyer v. Allbirds, Inc.*,
2022 WL 1136799 (S.D.N.Y. Apr. 18, 2022) .................................................. 31, 32

*Ellerbe v. President of the U.S.*,
   2020 WL 4570708 (E.D. Pa. Aug. 7, 2020) ........................................................ 11

*Exeter Holdings, Ltd. v. Haltman*,
   2020 WL 4587533 (E.D.N.Y. Apr. 21, 2020) ..................................................... 20

*Fiala v. Wasco Sanitary Dist.*,
   2012 WL 917851 (N.D. Ill. Mar. 16, 2012)....................................................... 21

*Gaidon v. Guardian Life Ins. Co. of Am.*,
   750 N.E.2d 1078 (N.Y. 2001)............................................................................ 8

*Gale v. Int'l Bus. Machines Corp.*,
   781 N.Y.S. 2d 45 (App. Div. 2004).................................................................. 32

*Gordon v. Target Corp.*,
   2022 WL 836773 (S.D.N.Y. Mar. 18, 2022) ..................................................... 32

*Goshen v. Mut. Life Ins. Co. of N.Y.*,
   774 N.E. 1190 (N.Y. 2002)............................................................................... 34

*Harris Cnty. v. Eli Lilly & Co.*,
   2022 WL 479943 (S.D. Tex. Feb. 16, 2022) ............................................... 22, 23

*Hinds Cnty. v. Wachovia Bank N.A.*,
   620 F. Supp. 2d 499 (S.D.N.Y. 2009) ............................................................... 17

*Ill. Brick Co. v. Illinois*,
   431 U.S. 720 (1977).......................................................................................... 21

*In re Amazon.com, Inc. eBook Antitrust Litig.*,
   2022 WL 4581903 (S.D.N.Y. Aug. 3, 2022)..................................................... 23

*In re Ins. Brokerage Antitrust Litig.*,
   618 F.3d 300 (3d Cir. 2010) ............................................................................. 30

*In re Insulin Pricing Litig.*,
   2019 WL 643709 (D.N.J. Feb. 15, 2019) ...................................................... 4, 21

*In re Integrated Res. Real Est. P'ships Sec. Litig.*,
   850 F. Supp. 1105 (S.D.N.Y. 1993) .................................................................... 9

*In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*,
   2010 WL 3239430 (S.D.N.Y. Aug. 17, 2010)........................................ 9, 10, 14

*In re Sumitomo Copper Litig.*,
   995 F. Supp. 451 (S.D.N.Y. 1998) .................................................................... 25

*In re: General Motors LLC Ignition Switch Litig.*,
  2016 WL 3920353 (S.D.N.Y. July 15, 2016) ........................................ 24

*Int'l Brotherhood of Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*,
  2012 WL 13202126 (E.D.N.Y. Apr. 19, 2012) ...................................... 12

*Klehr v. A.O. Smith Corp.*,
  521 U.S. 179 (1997)............................................................................... 16

*Koch v. Christie's Int'l PLC*,
  785 F. Supp. 2d 105 (S.D.N.Y. 2011) ..................................... 8, 9, 10, 13

*Lanza v. Merrill Lynch & Co.*,
  154 F.3d 56 (2d Cir. 1998) ............................................................ 19, 20

*Leslie v. Minson*,
  679 F. Supp. 280 (S.D.N.Y. 1988) .................................................. 27, 28

*Lundy v. Cath. Health Sys. of Long Island, Inc.*,
  711 F.3d 106 (2nd Cir. 2013) ................................................................ 25

*Lynch v. Amoruso*,
  232 F. Supp. 3d 460 (S.D.N.Y. 2017) ............................................. 24, 26

*Marshall v. Hyundai Motor Am.*,
  51 F. Supp. 3d 451 (S.D.N.Y. 2014) ...................................................... 8

*Masters v. GlaxoSmithKline*,
  271 F. App'x 46 (2d Cir. 2008) ............................................................. 11

*Matana v. Merkin*,
  957 F. Supp. 2d 473 (S.D.N.Y. 2013) .................................................... 9

*McCarthy v. Recordex Serv., Inc.*,
  80 F.3d 842 (3d Cir. 1996) ................................................................... 21

*McLaughlin v. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) ................................................................. 24

*MG West 100 LLC v. St. Michael's Protestant Episcopal Church*,
  8 N.Y.S.3d 299 (App. Div. 2015)........................................................... 34

*Milo v. Galante*,
  2011 WL 1214769 (D. Conn. Mar. 28, 2011) .................................. 14, 16

*Minnesota v. Sanofi-Aventis U.S. LLC*,
  2020 WL 2394155 (D.N.J. Mar. 31, 2020)............................................. 23

*Moss v. BMO Harris Bank, N.A.*,
   258 F. Supp. 3d 289 (E.D.N.Y. 2017) ............................................................... 30

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*,
   2019 WL 1418129 (D.N.J. Mar. 29, 2019) ............................................. 22, 23, 35

*Nat'l Grp. For Commc'ns and Computs. Ltd. v. Lucent Techs. Inc.*,
   420 F. Supp. 2d 253 (S.D.N.Y. 2006) ........................................................... 15, 16

*Port Auth. of N.Y. & N.J. v. Allied Corp.*,
   914 F. Supp. 960 (S.D.N.Y. 1995) ...................................................................... 18

*Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*,
   898 F. Supp. 2d 673 (S.D.N.Y. 2012) ................................................................. 35

*Rand v. Anaconda-Ericsson*,
   794 F.2d 843 (2d Cir. 1986) ............................................................................... 22

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979) ........................................................................................... 23

*Reves v. Ernst & Young*,
   507 U.S. 170 (1993) ........................................................................................... 29

*Rotella v. Wood*,
   528 U.S. 549 (2000) ........................................................................................ 8, 19

*Ruzhinskaya v. Healthport Techs., LLC*,
   311 F.R.D. 87 (S.D.N.Y. 2015) ............................................................................ 9

*Schwab v. Philip Morris USA, Inc.*,
   449 F. Supp. 2d 992 (E.D.N.Y. 2006) ................................................................. 22

*Simmons v. Reich*,
   2021 WL 5023354 (2d Cir. Oct. 29, 2021) .......................................................... 20

*Solano v. Delmed, Inc.*,
   759 F. Supp. 847 (D.D.C. 1991) ......................................................................... 14

*Sperber v. Boesky*,
   849 F.2d 60 (2d Cir. 1988) ................................................................................. 22

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008) ........................................................................... 8, 13

*Sutherland v. Remax 2000*,
   2008 WL 3307201 (N.Y. Sup. Ct. Aug. 7, 2008) ................................................ 32

*T.N. Metro Holdings, I, LLC v. Commonwealth Ins. Co.*,
 2016 WL 7243554 (S.D.N.Y. Dec. 14, 2016) ....................................................... 18

*Trollinger v. Tyson Foods, Inc.*,
 370 F.3d 602 (6th Cir. 2004) ............................................................................... 21

*United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*,
 719 F.3d 849 (7th Cir. 2013) ......................................................................... 29, 30

*Wal-Mart Stores, Inc. v. Knickrehm*,
 101 F. Supp. 2d 749 (E.D. Ark. 2000) .................................................................. 30

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
 127 F. Supp. 3d 156 (S.D.N.Y. 2015) ..................................................................... 5

*Wender v. Gilberg Agency*,
 716 N.Y.S.2d 40 (App. Div. 2000) ................................................................... 8, 15

*Westchester Cnty. Indep. Party v. Astorino*,
 137 F. Supp. 3d 586 (S.D.N.Y. 2015) .................................................................. 24

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
 328 F. App'x. 695 (2d Cir. 2009) ........................................................................... 8

*Xerion Ptns, I LLC v. Resurgent Asset Mgmt.*,
 474 F. Supp. 2d 505 (S.D.N.Y. 2007) .................................................................. 27

**Statutes & Other Authority**

18 U.S.C. § 1964(c) ...................................................................................................... 23

42 U.S.C. § 1395w-3a(c)(6)(B) ................................................................................ 3, 26

42 U.S.C. § 1396r-8(a)................................................................................................. 29

N.Y. Gen. Bus. Law §§ 349(a) ..................................................................................... 31

Patient Protection and Affordable Care Act,
 Pub. L. 111-148, § 2501(c), 124 Stat. 119 (2010) ................................................ 29

# INTRODUCTION

Albany County's belated attack on the pricing system for diabetes medications continues to fly in the face of the facts and the law.  The County alleges that the Manufacturer Defendants' payments of rebates to pharmacy benefit managers ("PBMs")—payments made so that the PBMs would include the Manufacturers' insulin medications on drug formularies that the PBMs offer to insurance providers such as the County—somehow were improper.  In the Amended Complaint's telling, the fact that the Manufacturer Defendants raised the list prices of their insulin medications in order to fund those rebates to the PBMs allegedly rendered those list prices fraudulent, because the list prices do not sufficiently reflect the Manufacturer Defendants' *net* prices (i.e., the prices after accounting for rebates and other discounts provided to PBMs).

Yet the Amended Complaint, like the County's original complaint, makes clear that the County has long known about and participated in this system.  The County affirmatively alleges that it contracted with certain PBM Defendants as far back as 2005 to receive the same pharmaceutical rebates that it now denounces, and even makes clear that since at least 2010 it has demanded and received *the full benefit*—every dollar—of these rebates.  Nor could the County plead that it was ignorant of how diabetes medications are priced, as other plaintiffs filed lawsuits with near-identical factual allegations against the same Manufacturer Defendants over six years ago.  Numerous sources—including the Manufacturer Defendants themselves—have also publicly disclosed the role of rebates in the pricing of prescription drugs, including insulin.

The Amended Complaint, like the original complaint, is thus time-barred.  The County's knowledge of—and participation in—the alleged scheme predates the statutes of limitations applicable to all of its claims.  The Manufacturer Defendants pointed out these deficiencies in their motion to dismiss the original complaint (which the County amended rather than opposing Defendants' motions to dismiss).  Nonetheless, the County continues to rely on boilerplate

1

allegations in an unavailing effort to avoid these statutes of limitations.  Such conclusory allegations cannot overcome settled precedent requiring this Court to dismiss these stale claims.

In addition to being time-barred, the County's claims all fail on the merits.  The County's federal RICO claim should be dismissed for several independent reasons.  By its own admission, the County does not directly purchase the drugs at issue from the Manufacturer Defendants. Settled law bars indirect purchasers—i.e., those more than one step down the supply chain— from bringing RICO claims.  Indeed, several other district courts have recently applied the indirect purchaser rule in dismissing RICO claims brought by other plaintiffs alleging the same "scheme" against the same Manufacturer Defendants.  The County has also failed to adequately allege the predicate acts of mail and wire fraud underlying its RICO claim.  Indeed, the Amended Complaint still fails to identify even *one* suggestion, by any Manufacturer Defendant, that its list prices somehow reflect net prices after accounting for rebates and discounts—let alone any such representation made to the County.  And the Amended Complaint's description of the practice of pharmaceutical manufacturers paying rebates to PBMs for branded prescription drugs—which is ubiquitous in the pharmaceutical industry—again comes nowhere close to indicating that the Manufacturers "conducted" an illegal enterprise.

The County's state-law claims also fail for several independent reasons.  Its General Business Law ("GBL") claim should be dismissed because the County does not (and cannot) plausibly allege causation, lacks standing to pursue the claim because it is not a direct purchaser, and fails to allege that any deceptive acts took place in New York.  Its unjust enrichment claim fails because—as the County itself admits—contracts govern the subject of the County's dispute, rendering the quasi-contract remedy of unjust enrichment unavailable, and also because the

Amended Complaint does not allege that the Manufacturer Defendants received any direct benefit from the County.

Although the Manufacturer Defendants pointed out these deficiencies in their prior motion to dismiss, the County has made no real attempt to address them in its Amended Complaint.  Accordingly, and for the reasons explained below, the Court should dismiss the County's claims against the Manufacturer Defendants in their entirety with prejudice.

## BACKGROUND

### I.    The Distribution of, and Payment for, Branded Prescription Drugs

The Manufacturer Defendants are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including insulin and other diabetes medications.  Am. Compl. ¶¶ 4, 225-33, 243.  Through their research and development efforts, the Manufacturers have made insulin "safer and more convenient to use."  *Id.* ¶¶ 225-26, 236.  The Manufacturer Defendants, like other prescription drug manufacturers, do not sell medications to the County; nor do they sell them to consumers (such as the County's beneficiaries), insurers, or health plans. *Id.* ¶¶ 264-65, 278; *id.* at 59 fig. 13.  Instead, drug manufacturers sell medications to wholesalers at a publicly reported list price known as the Wholesale Acquisition Cost ("WAC").[1]  *Id.* ¶¶ 264, 266-67.  WAC is defined by federal law as "the manufacturer's list price for the drug or biological . . . *not including prompt pay or other discounts, rebates, or reductions in price*."  42 U.S.C. § 1395w-3a(c)(6)(B) (emphasis added).

Wholesalers re-sell medications to pharmacies at prices they negotiate separately with each pharmacy.  Am. Compl. ¶¶ 264-65, 278; *see also In re Insulin Pricing Litig.*, 2019 WL

---

[1] The Amended Complaint also alleges that Manufacturers may occasionally sell drugs to other intermediaries like mail-order pharmacies in lieu of traditional wholesalers.  Am. Compl. ¶ 264.

643709, at *2 (D.N.J. Feb. 15, 2019).  Pharmacies then sell the medications to consumers.  Am. Compl. ¶ 264.

PBMs, insurers, and health plans—like the County—do not generally distribute medications.  Instead, they are involved in the sale of medications through a separate payment chain.  *Id.* ¶¶ 264-65, 269, *id.* at 59 fig. 13.  Generally, payments are made first from wholesalers to manufacturers, then from pharmacies to wholesalers, and finally from consumers—and/or their insurer, if any—to their pharmacies.  *Id.* ¶ 264.  The actors in this payment chain pay different prices set by different entities for the same medication.  *Id.* ¶ 265.  The price a consumer pays for medications like insulin depends on a variety of factors, including insurance status and the terms and benefit design of a consumer's health plan.  *Id.* ¶¶ 264, 269, 278.

Like other governmental entities, the County operates a "self-insured health plan" that provides services for its beneficiaries, including subsidizing their purchases of diabetes medications.  *Id.* ¶¶ 37-38, 403, 406, 407.  The County—along with many other health plans and insurers—contracts with the PBM Defendants to negotiate with drug manufacturers and manage its prescription drug program.  *Id.* ¶¶ 8-9, 270-71, 275-78, 404, 408.  As part of this arrangement, the PBM Defendants develop drug formularies that dictate which drugs are covered by the County's health plan, and at what cost.  *Id.*  Access to the PBM Defendants' national formularies is critical to drug manufacturers, a fact that allows the PBMs to "wield enormous control over drug prices and purchasing behavior."  *Id.* ¶¶ 9-10, 316.  PBMs use this market power to negotiate discounts and rebates from drug manufacturers, and PBMs in turn share those discounts and rebates with their health plan clients, including the County, under the terms of the PBMs' contracts with their clients.  *Id.* ¶¶ 277, 282-83, 290, 355, 453, 461-66, 476; *id.* at 59 fig. 13.

The County has been contracting with the PBM Defendants for services related to the at-issue products for two decades. *Id.* ¶¶ 459-71.  The Amended Complaint acknowledges that the County first contracted with a PBM nearly 20 years ago in 2006, and that at least since 2017, the County's contract with its PBM included a "transparent pricing model" that guarantees the County 100% of the rebates the PBM receives from pharmaceutical manufacturers, and prohibits the PBM from "retain[ing] any money associated with prescription drug rebates." *Id.* ¶¶ 461, 465-67, 469.  Indeed, the agreements attached to the Amended Complaint confirm that since 2010, the County has received every dollar in rebates that the Manufacturers pay to the County's PBM.  ECF No. 137-2 at § 6.2 (2010 Medco agreement guaranteeing the County "100% of the Total Rebates received by Medco"); ECF No. 137-3 at Ex. A-3, § 1.1 (2019 agreement with ESI guaranteeing the county "100% of the Rebates received by ESI"); *see also* Ex. 1,[2] ALBANY CNTY. LEG. PERSONNEL COMM., at 50 (Aug. 29, 2018), https://bit.ly/3iDFwyZ (Albany County legislative materials confirming receipt of 100% of PBM rebates).[3]  Despite contracting for *all* of the rebates negotiated by its PBM, the County asserts (in boilerplate allegations borrowed from other complaints) that it has been harmed by these very "secret" rebates and that PBMs are withholding "larger and larger" portions of these rebates from their clients.  Am. Compl. ¶¶ 23, 320, 352, 357, 401.

## II.  The Alleged "Scheme"

According to the legal conclusions asserted in the Amended Complaint—but not its factual allegations—the pricing and rebate system for diabetes medications in which the County

---

[2] References to "Ex." are exhibits to the Declaration of Chui-Lai Cheung filed concurrently.

[3] Courts routinely take judicial notice of government records "retrieved from official government websites." *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (collecting cases).

has participated for twenty years is in fact a fraudulent pricing scheme of which the County was entirely unaware. As to the Manufacturer Defendants, the allegedly fraudulent pricing scheme turns on two core allegations. First, the County claims that the Manufacturer Defendants agreed with each other and the PBM Defendants to raise list prices, while maintaining the "net price"— i.e., the list price minus rebates and discounts paid to PBMs—by increasing rebates. *Id.* ¶¶ 254-62, 317-319. Second, the County alleges that the Manufacturers misled the public by holding out their published list prices as reasonable, while knowing that those list prices were higher than the net prices. *Id.* ¶¶ 414-19. In other words, the County complains that it should have paid the net price—after rebates—and not the list price for the at-issue medications.

Yet that is exactly what the County contracted for with its PBMs. As the agreements attached to the Amended Complaint show, since 2010 the County has been guaranteed 100% of the rebates negotiated by its PBM for those very same medications. ECF No. 137-2 at § 6.2; ECF No. 137-3 at Ex. A-3, § 1.1; *see also* Am. Compl. ¶¶ 465-67, 469. The County was not ignorant of manufacturer rebates paid to PBMs. Rather, the Amended Complaint makes clear that the County has been contracting for and directly benefitting from these rebates for years. Am. Compl. ¶ 476.

Moreover, while the County premises its claims on purported misrepresentations, the Amended Complaint fails to identify any false statement made by any Manufacturer Defendant in furtherance of the alleged scheme, including any statement made to the County. The Amended Complaint is similarly devoid of factual allegations showing that the manufacturers, PBMs, and pharmacies joined together to fix prices. Rather, the Amended Complaint makes clear that the payment of rebates was well known to the County and was driven by normal market forces, including increased PBM negotiating leverage after years of consolidations in the

PBM industry.  *See id.* ¶¶ 285-88, 290.  Indeed, far from showing any collusion among the

Manufacturers, the Amended Complaint recognizes that rebates to PBMs reflect the existence of

intense *competition* among manufacturers for formulary positions.  *E.g.*, *id.* ¶¶ 22, 319.

Albany County nevertheless attempts to transform this ordinary business relationship into

a purported scheme that violated the Racketeer Influenced and Corrupt Organizations Act

("RICO"), 18 U.S.C. § 1962(c), as well as GBL § 349.  *See* Am. Compl. ¶¶ 508-76, 577-92.  The

Amended Complaint also alleges that the Manufacturers' conduct constituted unjust enrichment.

*Id.* ¶¶ 593-601.

## ARGUMENT

## I.    Albany County's Claims Are All Barred by Statutes of Limitations

The Amended Complaint makes clear that the County's claims are time-barred.  The

County alleges that it was harmed because the Manufacturer Defendants' list prices for their

diabetes medications did not exclude the rebates paid to the PBM Defendants, and as a result, the

County supposedly paid inflated prices.[4]  *See, e.g.*, Am. Compl. ¶¶ 26-28, 424-25.  But the

County admittedly knew well before the applicable limitations periods that the Manufacturer

Defendants' list prices excluded rebates and that the PBMs used their market power to demand

increasing rebates in their formulary negotiations with the Manufacturer Defendants.  That is

why the County—by its own admission—has contracted for and received the full amount of

these rebates in agreements with PBMs stretching back over 12 years.  *Id.* ¶ 466; ECF No. 137-2

at § 6.2; ECF No. 137-3 at Ex. A-3, § 1.1.  Nearly identical lawsuits and publicly available

documents—including numerous national and local news articles, several of which the County

---

[4] Given that the County contracted for and received 100% of the rebates negotiated by its PBMs, the complaint acknowledges that far from being harmed by this rebating system, the County directly benefited from it.

cites in its Amended Complaint—further make clear that the conduct the County challenges was publicly known at least by February 2017.  And the County's attempts to excuse its delay by pointing to inapplicable tolling doctrines do nothing to salvage its claims.

### A.    The County's Claims Have Expired

#### 1.    Legal Standards for the Relevant Statutes of Limitations

RICO claims are subject to a four-year statute of limitations that begins to run when a plaintiff knew or should have known of the alleged scheme, not when the plaintiff discovers the underlying cause of action.  *See Rotella v. Wood*, 528 U.S. 549, 551, 555 (2000) ("[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock.").  The statute of limitations begins to run "even where the full extent of the [alleged] RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry."  *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 328 F. App'x. 695, 697 (2d Cir. 2009) (citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008)).  "Such a storm warning 'need not detail every aspect of the alleged fraudulent scheme.'"  *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 114 (S.D.N.Y. 2011) (quoting *Staehr*, 547 F.3d at 427).

Claims under Section 349 of the GBL are subject to a three-year statute of limitations, which begins to run when a plaintiff is injured by a deceptive act or practice that violates the section.  *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1081-83 (N.Y. 2001).  As with RICO claims, the limitations period under the GBL begins to run when a plaintiff is "apprised of sufficient facts to put them on notice that reasonable diligence was required."  *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 464 (S.D.N.Y. 2014).  "[T]he date of discovery rule is not applicable [to claims under Section 349] and cannot serve to extend that limitations period."  *Wender v. Gilberg Agency*, 716 N.Y.S.2d 40, 41-42 (App. Div. 2000).

Similarly, claims for unjust enrichment under New York law are subject to a three-year statute of limitations when a plaintiff "seeks monetary damages," as is the case here. *Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013); *Ruzhinskaya v. Healthport Techs., LLC*, 311 F.R.D. 87, 109 (S.D.N.Y. 2015); *see also* Am. Compl. ¶ 600.

As detailed below, the Amended Complaint itself makes clear that the County knew of the alleged scheme *no later than* February 2017—i.e., over five years before it sued—and began explicitly contracting with PBMs for a share of Manufacturer rebates nearly two decades ago. Because the County's claims accrued well before the start of the limitations periods, the claims are untimely and should be dismissed.

### 2.   The County Was Fully Aware of the So-Called Scheme

"Determining whether a plaintiff had 'inquiry notice' is judged using an objective standard, requiring evaluation of all relevant circumstances." *Koch*, 785 F. Supp. 2d at 114. Information received by the plaintiff, such as "public disclosures in the media about the . . . defendant," or "other lawsuits alleging fraud committed by the defendant" suffice to give rise to inquiry notice. *In re Integrated Res. Real Est. P'ships Sec. Litig.*, 850 F. Supp. 1105, 1132 (S.D.N.Y. 1993); *421-A Tenants Ass'n. Inc. v. 125 Court St. LLC*, 2017 WL 6612933, at *5 (E.D.N.Y. Nov. 2, 2017) ("[T]he filing of a substantially similar action against the same defendants is evidence that a reasonably diligent plaintiff would have discovered the facts constituting the violation, sufficient to impute inquiry notice." (quotation marks and citation omitted)); *see also In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 2010 WL 3239430, *7 (S.D.N.Y. Aug. 17, 2010) ("Even a single news article may give rise to inquiry notice."). There is an abundance of such information here.[5]

---

[5] "It is proper to dismiss a complaint on the basis of inquiry notice when the complaint and other uncontroverted evidence clearly support such a finding. In this analysis courts may take judicial

The County was on notice of its alleged claims at least as early as 2017, when other plaintiffs filed the first in a series of lawsuits asserting nearly identical allegations, relating to the same insulin pricing practices, against the same Manufacturer Defendants.  The earliest of these lawsuits, *In re Insulin Pricing Litigation*, was filed over six years ago—on February 2, 2017—in the District of New Jersey.  Complaint, *In re Insulin Pricing Litig.*, No. 17-00699 (D.N.J.), ECF No. 1 (hereafter, "*Insulin Pricing* Compl.").  The filing of this "substantially similar" litigation—which also raised, *inter alia*, RICO and GBL claims against the same Manufacturer Defendants related to the same purported "insulin pricing scheme"—was more than sufficient to put the County on notice of its claims.  *421-A Tenants Ass'n*, 2017 WL 6612933, at *5.

Indeed, the allegations in *Insulin Pricing* are virtually identical to the allegations in the County's Amended Complaint.  *See Koch*, 785 F. Supp. 2d at 114.  For example, both Albany County and the plaintiffs in *Insulin Pricing* allege that the same Manufacturer Defendants violated RICO and GBL § 349 by conspiring with PBMs to further a purported insulin "pricing scheme."  *Compare Insulin Pricing* Compl. ¶¶ 2, 10-12 (alleging that drug manufacturers conspire with PBMs to inflate the spread between list and net prices as part of a "*quid pro quo*" for formulary placement), *with* Am. Compl. ¶¶ 4, 18, 388 (same).  Indeed, the County copied certain of its allegations nearly verbatim from the *Insulin Pricing* complaint.  *Compare Insulin Pricing* Compl. ¶ 123 (alleging that "[i]n 13 instances since 2009," Sanofi and Novo Nordisk raised prices for their insulins "in tandem, 'taking the same price increase down to the decimal point within a few days of each other'"), *with* Am. Compl. ¶ 255 (alleging that "between 2009

---

notice of financial data, news coverage, and prior lawsuits without converting a motion to dismiss into a motion for summary judgment. Courts merely note the existence of the information without analyzing whether the information is true." *In re Morgan Stanley*, 2010 WL 3239430, at *7 (quotation marks and citations omitted).

and 2015," Sanofi and Novo Nordisk raised prices of their insulins "in tandem, 13 times, taking

the same price increase down to the decimal point within a few days of each other").[6]

Courts have found prior overlapping litigations sufficient to establish inquiry notice on

far less.[7]  *See 421-A Tenants Assn.*, 2017 WL 6612933, at *5 ("There is, however, no

requirement that the prior case allege the same causes of action; the question is whether the

earlier action 'sufficiently made known the underlying factual allegations forming the basis' of

both actions." (quoting *Masters v. GlaxoSmithKline*, 271 F. App'x 46, 49 (2d Cir. 2008)).  Under

this well-established authority, a sophisticated government entity like Albany County—which

was engaged in negotiations relating to the same pricing mechanisms at the same time—cannot

claim that it would not have become aware of a nationwide class action lawsuit challenging that

same conduct for over six years, if it had been exercising due diligence.  *See id.* at *5-7 ("The

fact that [previous plaintiffs] identified the same fraud in 2012 and filed a complaint against

[defendant] establishes that there was sufficient information in the public sphere to put the

plaintiffs on inquiry notice.").

The Amended Complaint's express allegations, exhibits, and the County's own materials

further confirm that the County knew all about rebates, their role in prescription drug pricing,

and the features of the alleged scheme as early as 2006—i.e., over sixteen years ago.  *See Ellerbe

v. President of the U.S.*, 2020 WL 4570708, at *2 (E.D. Pa. Aug. 7, 2020) ("[The] complaint

---

[6] The County's initial complaint cited the same 2016 article in support of this statement, a reference the County removed after Manufacturer Defendants identified the similarity in their prior motion to dismiss.  *Compare* ECF No. 1 ¶ 271 & n.103 *with* Am. Compl. ¶ 255.

[7] Albany County is not the first municipality to file a follow-on suit based on the allegations in the *Insulin Pricing* litigation.  Two other municipalities in Texas and Florida filed largely identical lawsuits modeled on *Insulin Pricing* in 2019 and 2021, respectively.  Complaint, *Harris Cnty. v. Eli Lilly & Co.*, No. 19-cv-04993 (S.D. Tex.), ECF No. 1-1; Complaint, *City of Miami v. Eli Lilly & Co.*, No. 21-cv-22636 (S.D. Fla.), ECF No. 1-2.  Both cases have been dismissed.  Final Judgment, *Harris Cnty.*, ECF No. 187; Order, *City of Miami*, ECF No. 126.

clearly shows [plaintiff] knew of the existence of his injury and its alleged cause . . . .").  The

exhibits appended to the Amended Complaint show that since at least 2006, the County has been

contracting with PBMs for a portion of manufacturer rebates.  ECF No. 137-1, at § VIII.B-C.  As

early as November 2010, those PBM agreements provided that the County's PBMs would pass

through 100% of manufacturer rebates to the County.  ECF No. 137-2 at § 6.2; ECF No. 137-3 at

Ex. A-3, § 1.1; *cf.* Ex. 1 at 50 (consultant for the County explaining that a "drug rebate is a

monetary reimbursement to a PBM from the drug manufacturer" that is "a significant cost

consideration").  These agreements were submitted in accordance with the County's explicit

request for a "transparent pricing model" wherein the PBMs would "not retain any money

associated with prescription drug rebates or any money associated with the margin between

guaranteed reimbursement rates and the actual amount paid to pharmacies."  Am. Compl. ¶¶

466-67.

The County's awareness of the supposed scheme is also highlighted by publicly available

news articles, Congressional reports, and regulatory filings that discussed the challenged conduct

years before the applicable limitations periods elapsed.[8]  As early as 2007, Congress began an

inquiry into the use of rebates in the pharmaceutical industry.  That year, the Congressional

Budget Office issued a report that noted "[m]anufacturers set their price to wholesalers . . .

keeping in mind that they will pay rebates to . . . a PBM," and that PBMs were providing

"Preferred Placement on Formular[ies]" in exchange for "Negotiated Rebate[s] for Brand-Name

---

[8] It is proper for courts to take judicial notice of "publicly available documents, such as
newspaper articles" in evaluating inquiry notice on a motion to dismiss.  *Int'l Brotherhood of
Teamsters Local 456 Health & Welfare Tr. Fund v. Quest Diagnostics Inc.*, 2012 WL 13202126,
at *8 (E.D.N.Y. Apr. 19, 2012).

Drugs."[9]  By at least 2012, news outlets across the country, including in upstate New York, were reporting on the market dynamics and rebating practices that the County now seeks to challenge.[10]  Indeed, the Amended Complaint itself cites to three such articles that pre-date the September 16, 2018 limitations date.  *See, e.g.*, Am. Compl. ¶¶ 341 n.38, 429 n.67, 431 n.78.

At the same time, the Manufacturer Defendants were also disclosing in public regulatory filings that competitive pressures were driving them to steadily increase rebate payments.[11]  For example, in its Annual Reports on SEC Form 20-F for 2014, and in its 2015 Half-Year Management Report on SEC Form 6-K, Sanofi acknowledged that, since at least 2014, it "had to increase the level of rebates for Lantus® required to maintain favorable formulary positions with key payers in the US."  *See* Ex. 9, *Sanofi*, 2014 Annual Report (Form 20-F) (Mar. 10, 2015), at 11, https://bit.ly/2WMCqKc; *id.* at 105 ("To maintain [favorable formulary] positions, we had to significantly increase the level of discounts offered in order to match the substantial rebates offered by our competitors."); Ex. 10, *Sanofi*, Half-Year Management Report (Ex. 99.2 to Form 6-K) (July 31, 2015), at 15, https://bit.ly/3FSPlCD.  Similarly, Novo Nordisk's 2013 Annual

---

[9] Ex. 2, CONG. BUDGET OFFICE, PUB. NO. 2703, PRESCRIPTION DRUG PRICING IN THE PRIVATE SECTOR, at 10-11 (2007), http://bit.ly/2NLfVkI.

[10] *See* Ex. 3, Andrew Pollack, *Health Insurers Pressing Down on Drug Prices*, NEW YORK TIMES, June 20, 2014; Ex. 4, Katie Thomas, *Prescription Costs Soar for Many Reasons*, DAILY GAZETTE (Schenectady, N.Y.), Aug. 24, 2016, at A9; Ex. 5, Lydia Ramsey Pflanzer, *Bernie Sanders Is Going After Insulin Makers over Price Hikes*, BUSINESS INSIDER (Nov. 1, 2016); Ex. 6, Jeffrey Bailin et al., *Global Pharma: Rising US Rebates Limit Margin Expansion*, CREDIT SUISSE, at 1, 26 (May 1, 2015); Ex. 7, Thomas Reinke, *PBMs Just Say No to Some Drugs – But Not to Others*, MANAGED CARE (Apr. 5, 2015); Ex. 8, Matthew Herper, *Inside the Secret World of Drug Company Rebates*, FORBES (May 10, 2012).

[11] The Court may take judicial notice of these filings in evaluating whether the County was put on inquiry notice of its causes of action.  *See Koch*, 785 F. Supp. 2d at 111-12 ("A district court may take judicial notice of the fact that . . . regulatory filings contained certain information, without regard to the truth of their contents, in deciding whether so-called 'storm warnings' were adequate to trigger inquiry notice." (quoting *Staehr*, 547 F.3d at 425)).

Report disclosed that Novo Nordisk paid over 32 billion Danish Krone (i.e., over $5 billion at then-current exchange rates) in rebates and other discounts to obtain "formulary status." Ex. 11, Novo Nordisk, 2013 Annual Report (Form 6-K) (Feb. 5, 2014), at 64, https://bit.ly/2KbSVu3. And Eli Lilly's 10-K for 2009 reported that "[i]n response to competitive pressures, [it] ha[d] entered into arrangements with [purchasers] which provide for discounts or rebates on one or more Lilly products." *See* Ex. 12, Eli Lilly & Co., 2009 Annual Report (Form 10-K) (Feb. 22, 2010), at 3, 26 (2010), https://investor.lilly.com/static-files/25a08f09-a3f9-4d84-a1cf-11fc31889180 (warning of "pressures for increased pharmaceutical discounts and rebates").

As these public filings and the articles cited in the Amended Complaint make clear, the County should have been aware of its claims long before their limitations periods elapsed. *7 W. 57th St. Realty Co. v. Citigroup, Inc.*, 2015 WL 1514539, at *21 (S.D.N.Y. Mar. 31, 2015) (granting motion to dismiss when plaintiff was on inquiry notice where news article cited in amended complaint detailed challenged conduct); *see also Milo v. Galante*, 2011 WL 1214769, at *5 (D. Conn. Mar. 28, 2011) (even out-of-state news articles published by outlets to which plaintiff did not subscribe can provide notice "regardless of whether the investor actually read the public available information" (internal citations omitted)); *In re Morgan Stanley*, 2010 WL 3239430, at *7; *Solano v. Delmed, Inc.*, 759 F. Supp. 847, 854 (D.D.C. 1991) (statements in defendant's annual reports regarding at-issue subject matter sufficient to put plaintiff on notice of cause of action).

Given all of this, the County clearly had inquiry notice (indeed, actual notice) of the supposed scheme long before the start of the limitations period.

**B.     The Amended Complaint's Conclusory Invocations of Tolling Doctrines Are Unavailing**

In an attempt to excuse its delay, the County invokes four tolling doctrines: (1) discovery rule; (2) fraudulent concealment; (3) estoppel; and (4) the allegedly continuing nature of the challenged conduct. Am. Compl. ¶¶ 491-507. None of these doctrines is available.

### 1.    Discovery Rule Tolling Does Not Apply

The County alleges that its claims are timely because it "began to learn about the [purported] Insulin Pricing Scheme in April 2021." Am. Compl. ¶ 492. As an initial matter, discovery rule tolling is inapplicable to GBL claims. *See Wender*, 716 N.Y.S.2d at 41-42. Moreover, as shown above, the County's claim is simply untrue. The County had every reason to know the ample public information discussing the *very same conduct that the County itself participated in* and now attacks—including news articles, regulatory filings, and the substantially similar 2017 *Insulin Pricing* complaint—years before it sued, and well outside the limitation periods for all of its claims. The fact that, based on readily accessible public information, numerous other parties were able to discover and publicly discuss the same conduct Albany County indisputably knew about, yet now seeks to challenge, belies any claim that the County could not have known of the purported scheme earlier.

### 2.    The County Has Not Established Fraudulent Concealment

The County's claims of fraudulent concealment are equally unavailing. The doctrine, which is a form of equitable tolling, applies in only "exceptional circumstances," and the plaintiff has the "burden of demonstrating the appropriateness of" its application. *Nat'l Grp. For Commc'ns and Computs. Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 264-65 (S.D.N.Y. 2006). "[E]quitable tolling is not available in state causes of action in New York." *See Busher v. Barry*, 2021 WL 5071871, at *4 (2d Cir. Nov. 2, 2021) (quoting *Jang Ho Choi v. Beautri Realty Corp.*, 22 N.Y.S.3d 431, 432 (App. Div. 2016)). To invoke the doctrine, a plaintiff must establish three elements: "(1) wrongful concealment by defendants (2) which prevented

plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing the discovery of the claim." *Id.* at 265.  "A plaintiff who is not reasonably diligent in investigating the defendant's underlying wrongful conduct may not assert fraudulent concealment in a civil RICO case.  In order to meet [its] burden, a plaintiff must plead the elements of fraudulent concealment with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure." *Milo*, 2011 WL 1214769, at *5; *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 194 (1997).

The Amended Complaint does not come close to meeting this standard.  Instead, it simply alleges, without elaboration, that the Defendants' "acts, omissions, and misrepresentations alleged throughout this complaint . . . fraudulently concealed the details of their scheme" and that such "acts, omissions, and misrepresentations were calculated to lull and induce" the County "into forbearing legal action or any inquiry that might lead to legal action."  Am. Compl. ¶¶ 498-99.  But as discussed below, the County fails to show any reasonable diligence.  Nor does it show that it was somehow prevented from discovering its claims or any wrongful concealment by Manufacturer Defendants.  Each of these is independently fatal.

Had the County conducted reasonable diligence, it would have become aware of the claims asserted in this lawsuit.  As discussed above, the County had years to review any number of the publicly available lawsuits that it eventually copied in bringing this action, as well as the myriad public statements outlining the same supposed scheme it attacks here.  Merely alleging fraudulent concealment does not excuse the County of the obligation to conduct this diligence. That is especially true here. The Amended Complaint makes no attempt to allege (much less with particularity) that the County made any effort to discover the alleged scheme, likely because the County already knew about the so-called scheme by directly participating in it for over a decade.

Nor does the County offer any explanation for why it waited over five years after the first of several similar lawsuits was filed to bring suit. *Hinds Cnty. v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 521 (S.D.N.Y. 2009) (quotation marks and citation omitted) ("Due diligence is not adequately pled if plaintiffs did not allege in the [complaint] that they exercised due diligence or if they make no allegation of any specific inquiries of [defendants], [or] detail when such inquiries were made, to whom, regarding what, and with what response.")

Similarly, the County also fails to explain how, once the *Insulin Pricing* plaintiffs filed a nearly identical lawsuit challenging the same alleged "scheme" in February 2017, the Manufacturer Defendants could possibly have concealed anything related to the scheme going forward.[12]  Nor could the County offer any such explanation, given its own knowledge—and acquisition—of rebates.  Because more than five years passed since the initial complaint was filed in *Insulin Pricing*, Albany County's unexplained assertion of fraudulent concealment could not save its claims, even if that assertion were accurate.

Lastly, as discussed further below, the Amended Complaint does not identify any misleading statement made by any Manufacturer Defendant, let alone statements that could have prevented the County from discovering its claims within the limitations period.  *See* Section III.A *infra*.

### 3.    Equitable Estoppel Is Unavailable

Nor is the County correct that the Manufacturer Defendants are equitably estopped from raising the statute of limitations.  Am. Compl. ¶ 501.  Equitable estoppel is "a doctrine to be

---

[12] The County's inclusion of cursory references to testimony by employees of the Manufacturer Defendants before Congress in 2019 is similarly unavailing, *see* Am. Compl. ¶ 342, as those hearings occurred a year *after* the limitation period for a RICO claim lapsed, and could not have had any impact on the County's ability to discover its claim *prior* to 2019 based on its own knowledge and the ample public record.  *See* Section I.A *supra*.

invoked sparingly and only under exceptional circumstances." *Feldman v. Strulovich*, 2022 WL 3447919, at *6 (S.D.N.Y. Aug. 17, 2022).

As a threshold matter, equitable estoppel is not unbounded: a plaintiff must still "bring his action within a reasonable time after actual or constructive knowledge of the misrepresentation." *T.N. Metro Holdings, I, LLC v. Commonwealth Ins. Co.*, 2016 WL 7243554, at *7-8 (S.D.N.Y. Dec. 14, 2016) (holding that an 18-month delay was "unreasonable"). Here, the County offers no excuse for waiting (at least) five years, which means that equitable estoppel cannot save the County's claims.

Moreover, the Amended Complaint makes clear that the doctrine does not apply here. The County's chief ground for estoppel is the unsupported assertion that the Manufacturer Defendants "were under a continuous duty to disclose to Plaintiff" the net price and rebates offered for insulins. Am. Compl. ¶ 501. But "[i]n the absence of a fiduciary relationship there [is] no affirmative duty to disclose." *Port Auth. of N.Y. & N.J. v. Allied Corp.*, 914 F. Supp. 960, 963 (S.D.N.Y. 1995); *Basso v. New York Univ.*, 2018 WL 2694430, at *3 (S.D.N.Y. June 5, 2018). The Amended Complaint makes clear that the Manufacturer Defendants had *no* relationship with the County whatsoever, let alone a fiduciary duty. *E.g.*, Am. Compl. at 59 fig. 13 (showing that there is no connection between Manufacturers and payors).

The County's second argument fares no better. The County appears to allege that the Manufacturer Defendants "knowingly misrepresented and concealed" facts about the net price and rebates offered for insulins and that the County relied "in good faith" on such misrepresentations. *Id.* ¶¶ 502-03. In order to adequately plead equitable estoppel, the County must "establish that subsequent and specific actions by defendants somehow kept [it] from timely bringing suit," and in particular must plausibly allege "that any misrepresentations were

made with the intent to deceive" the County. *Feldman*, 2022 WL 3447919, at *6-7. But, as explained below, far from identifying any specific actions or statements that prevented the County from filing suit, the Amended Complaint does not identify *any* misrepresentation made by *any* Manufacturer Defendant—let alone misrepresentations intended to deceive the County. *See* Section III.A *infra*. The County instead simply states in conclusory fashion that the Manufacturers made unspecified misrepresentations "with a reasonable expectation that Plaintiff would act upon" them. Am. Compl. ¶ 502. These threadbare legal conclusions are plainly insufficient. *Feldman*, 2022 WL 3447919, at *7 (no equitable estoppel where plaintiffs fail to identify which defendant made which statement, the content of any statements, or establish defendants' intent to deceive).

### 4. The Continuing Violations Theory Is Inapplicable

The County's last attempt to save its untimely claims is to argue that the challenged conduct constitutes a series of continuing wrongs, and thus that the claims cannot accrue until the acts have ceased, as long as some of the acts occurred within the limitation period. Am. Compl. ¶ 506. The Supreme Court has expressly rejected this argument: a "last predicate act" approach would "thwart[] the basic objective of repose underlying the very notion of a limitations period." *Rotella*, 528 U.S. at 554; *Lanza v. Merrill Lynch & Co.*, 154 F.3d 56, 59-60 (2d Cir. 1998). The Second Circuit's decision in *Lanza* is instructive. There, the court noted that in order to resurrect an untimely RICO claim under the so-called "separate accrual" theory, the relevant "injury had to be *new* and *independent* to be actionable." *Lanza*, 154 F.3d at 59 (emphasis added). Because the more recent communications and collection of annual fees on which the plaintiff relied were "simply a part of the alleged scheme," the court found that they could not be viewed as "separate and distinct fraudulent acts resulting in new and independent injuries." *Id.* at 59-60.

As in *Lanza*, the County alleges the existence of a single pricing scheme that has allegedly unfolded over many years.  The alleged harm is based on the same conduct (the putative "scheme")—and that conduct was supposedly being undertaken long before the limitations period expired.  The fact that the County claims to have been harmed by the "scheme" both before and within the applicable limitations period is irrelevant.  *See id.*; *see also Simmons v. Reich*, 2021 WL 5023354, at *3 (2d Cir. Oct. 29, 2021) ("[W]hile Plaintiffs argue that they suffered 'new and independent' injuries within the limitations period in the form of foreclosure proceedings, threats of eviction, and the continuing obligation to make 'exorbitant payments,' these events are clearly derivative of the allegedly fraudulent mortgage agreements.").

Nor does the continuing violations doctrine apply to GBL claims where (as here) the plaintiff's "fraud claim was complete at the time of [purchase], although damages increased over time."  *DuBuisson v. Nat'l Union Fire Ins. of Pitt.*, 2021 WL 3141672, at *8-9 (S.D.N.Y. July 26, 2021) (quotation marks and citation omitted) (continuing violations theory applies to a "series of independent, distinct wrongs," and is not applicable where plaintiff "[did] not point to any specific wrong that occurred each time they paid a [challenged price], other than having to pay it").  And the doctrine does not apply to unjust enrichment claims.  *Exeter Holdings, Ltd. v. Haltman*, 2020 WL 4587533, at *10 (E.D.N.Y. Apr. 21, 2020).  Moreover, "New York courts have repeatedly refused to apply the continuing violation doctrine to common law fraud-based claims."  *Cupersmith v. Piaker & Lyons P.C.*, 2016 WL 5394712, at *11 (N.D.N.Y. Sept. 27, 2016).

## II.    The County's RICO Claims Fail on the Merits

### A.    The Indirect Purchaser Rule Bars the County's RICO Claims Against the Manufacturer Defendants

Under the indirect purchaser rule, only direct purchasers have standing to bring antitrust and RICO claims. The County thus lacks standing to bring RICO claims because it does not purchase the at-issue medications directly from the Manufacturer Defendants. Rather, as the Amended Complaint concedes, Manufacturer Defendants sell their medications only to wholesalers and (occasionally) mail-order pharmacies. Am. Compl. ¶¶ 264, 274. The County is neither a wholesaler nor a mail-order pharmacy, and the Amended Complaint does not and cannot allege that the County purchased any insulin products directly from the Manufacturers. *Id*. ¶¶ 264-65, 269; *see also id.* at 59 fig. 13; RICO Statement, ECF No. 63 at 11-12. Albany County is thus a classic "indirect purchaser" and lacks standing under RICO. *See McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 848, 855 (3d Cir. 1996) ("only the purchaser immediately downstream" has standing to assert RICO claims for payment of "excessive prices").

The indirect purchaser rule originated in federal antitrust law. *See generally Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977). Since then, courts across the country have held that the rule applies equally to RICO claims. *See, e.g., McCarthy*, 80 F.3d at 855 ("The precepts taught by *Illinois Brick* and *Utilicorp* apply to RICO claims, thereby denying RICO standing to indirect victims."); *Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 616 (6th Cir. 2004) ("[I]ndirect purchasers lack standing under RICO . . . to sue for overcharges passed on to them by middlemen . . . ."); *see also In re Insulin Pricing Litig.*, 2019 WL 643709, at *13 (dismissing RICO claims where plaintiffs "failed to allege that they directly purchased the analog insulin from Defendants"); *Fiala v. Wasco Sanitary Dist.*, 2012 WL 917851, at *6 (N.D. Ill. Mar. 16, 2012) ("Any such argument would have failed in any event due to the 'indirect purchaser' rule. The rule holds that a plaintiff cannot seek damages under RICO where it is an indirect purchaser . . . ."). And in accordance with that rule, district courts have recently held that the indirect

purchaser rule barred similar RICO claims against the same Manufacturer Defendants.  *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at *16 (D.N.J. Mar. 29, 2019); *Harris Cnty. v. Eli Lilly & Co.*, 2022 WL 479943, at *8-11 (S.D. Tex. Feb. 16, 2022).

Courts in this Circuit have similarly recognized that "[t]he indirect purchaser rule, or *Illinois Brick* doctrine . . . equally applies to RICO actions for treble damages."  *Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1051 (E.D.N.Y. 2006), *rev'd on other grounds* 522 F.3d 215 (2d Cir. 2008); *accord Sperber v. Boesky*, 849 F.2d 60, 64-65 (2d Cir. 1988) (indirect stock purchaser plaintiffs, "like the consumers who pay [an] intimidated storekeeper higher prices . . . are further removed from the racketeer than the storekeeper is and probably cannot recover under RICO, just as they cannot recover under the anti-trust laws"); *see also Rand v. Anaconda-Ericsson*, 794 F.2d 843, 849 (2d Cir. 1986) (indirectly injured "plaintiffs lack standing to sue under RICO, for reasons similar to their lack of standing under the antitrust laws").  As the Second Circuit has explained, it is not reasonable or consistent with the aims of the statute to permit downstream purchasers to bring suit under RICO.  *See Sperber*, 849 F.2d at 65 ("Extending liability to everyone to whom an illegal price is passed would extend the chain of liability indefinitely because, economists tell us, all products in the economy are related to all other products, and a change in the price of one necessarily affects the remainder.").

Nor can the County invoke the so-called co-conspirator exception to the indirect purchaser rule.  Under that approach, which has been adopted by some courts, a plaintiff may sue an indirect seller that conspired with a direct seller.  But the Second Circuit "has not endorsed or adopted that exception. . . .  As such, in this Circuit, Plaintiffs cannot avail themselves of the co-conspirator exception and thus the bright-line rule established by *Illinois Brick* applies."  *In re*

*Amazon.com, Inc. eBook Antitrust Litig.*, 2022 WL 4581903, at \*9 (S.D.N.Y. Aug. 3, 2022); *see also Harris Cnty.*, 2022 WL 479943, at \*9-11 (explaining that the exception "rests upon the rejection of . . . *Illinois Brick*'s core logic").

Several district courts have addressed this exact question and dismissed nearly identical RICO claims brought by other plaintiffs—including Harris County, Texas—against the same manufacturers based on the same allegations.  *See, e.g.*, *Harris Cnty.*, 2022 WL 479943, at \*8-11 (Harris County's theory "does not surmount *Illinois Brick*'s tall wall against indirect purchaser suits"); *MSP Recovery Claims, Series, LLC*, 2019 WL 1418129, at \*16 (discussing "the voluminous federal jurisprudence holding that courts may apply the indirect purchaser rule . . . to RICO actions with the same force as in the antitrust context"); *see also Minnesota v. Sanofi-Aventis U.S. LLC*, 2020 WL 2394155, at \*8-12 (D.N.J. Mar. 31, 2020) (dismissing RICO claims under the indirect purchaser rule).

Because Albany County does not and cannot allege that it purchases insulin products directly from any Manufacturer Defendant, it indisputably is an "indirect purchaser" and lacks standing to assert its RICO claims.

### B.    The County Fails To Allege Any Cognizable RICO Injury

In addition to the indirect-purchaser bar, the County lacks standing because RICO provides a remedy only to a "person *injured* in his business or property by reason of a violation." 18 U.S.C. § 1964(c) (emphasis added); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) (explaining in an analogous context that "[w]hen a commercial enterprise suffers a loss of money it suffers an injury in both its 'business' and its 'property'"); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 36 F. Supp. 2d 560, 569 (E.D.N.Y. 1999) ("economic losses would constitute an injury to both the plaintiffs' business and property" under § 1964(c)).  An "indirect

injury is insufficient to convey standing to bring a civil RICO claim." *Lynch v. Amoruso*, 232 F. Supp. 3d 460, 470 (S.D.N.Y. 2017).

By the County's own admission, it has suffered no injury at all. In the handful of conclusory allegations that the Amended Complaint spares for this element, the County alleges that it paid increased healthcare costs because the Manufacturer Defendants' supposedly "false list prices" for the at-issue medications do not include the rebates the Manufacturer Defendants pay to PBMs. Am. Compl. ¶¶ 557, 563-64 (alleging injury); *id*. ¶¶ 317-19 (explaining allegations that "list prices" are "false"). But the County expressly contracts with its PBM for a "'transparent pricing' model" that guarantees that its PBM passed through *100%* of the rebates the PBM received from manufacturers to the County. Am. Compl. ¶¶ 172, 465-69; *see also* ECF No. 137-3 at Ex. A-3 § 1.1. Thus, even if the County were correct that the Manufacturers violated the law by raising list prices to pay "secret" rebates—and it is not—the County cannot have been harmed by this conduct, because it expressly contracted for and received *every cent* of the rebates that the Amended Complaint targets. *Westchester Cnty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 615 (S.D.N.Y. 2015) ("Cavallo plainly cannot assert any economic injuries from losing his non-compensated position on the Westchester County Police Advisory Board. Therefore, the individual Plaintiffs have not adequately pled RICO injuries."); *In re: General Motors LLC Ignition Switch Litig.*, 2016 WL 3920353, at *16-18 (S.D.N.Y. July 15, 2016) (dismissing RICO claims for lack of "injury to 'business or property'" and noting that RICO "'requires proof of concrete financial loss.'" (quoting *McLaughlin v. Tobacco Co.*, 522 F.3d 215, 227-28 (2d Cir. 2008)) (emphasis omitted)). Because the Amended Complaint makes clear that the County was aware of and fully received the purportedly "secret" rebates paid by the

Manufacturers during the relevant time period, (ECF. No. 137-2 at § 6.2; ECF. No. 137-3 at Ex. A-3, § 1.1; *see also* Am. Compl. ¶¶ 465-67, 469), it cannot assert a RICO injury.

## C.   The County Fails To Adequately Plead Predicate Acts (Mail or Wire Fraud)

The County's RICO claims also fail because it has not pleaded the existence of any fraud or misrepresentation by the Manufacturer Defendants, much less with the particularity required by Rule 9(b).  Where, as here, a RICO claim rests on predicate acts of mail and wire fraud,[13] a plaintiff must plead the circumstances constituting fraud with particularity under Rule 9(b).  *See Lundy v. Cath. Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2nd Cir. 2013).  Absent a specification of the statements that are allegedly false or misleading, and an identification of "when and where the statements were made . . . [and] those responsible for the statements," a RICO claim grounded in fraud should be dismissed.  *Id.* (citation omitted); *see also In re Sumitomo Copper Litig.*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998).

### 1.   The Amended Complaint Fails To Plead Any Fraud

The Amended Complaint is devoid of any specific factual allegations regarding any statement or misrepresentation that could constitute mail or wire fraud.  Despite the County's sweeping allegations that Defendants' putative fraud "involved thousands of communications and transmissions," *see* Am. Compl. ¶¶ 545, 549, the theory of deceit asserted in the Amended Complaint is that the Manufacturer Defendants reported "false" list prices—i.e., the publicly available WAC prices—to third-party reporting services and downstream entities.  *E.g.*, *id.* ¶¶ 266-67, 410-17.  But that allegation cannot substantiate the County's fraud claims, because the

---

[13] While the Amended Complaint also lists "[m]ultiple instances of unlawful activity in violation of 18 U.S.C. § 1952" (the Travel Act) among the relevant predicate acts, Am. Compl. ¶ 574, it provides no explanation as to what those activities might be.  Indeed, other than that single reference in paragraph 574, the Amended Complaint never mentions the Travel Act at all.

Manufacturers' reported WAC prices were exactly what they purported to be—i.e., the list prices that the Manufacturers in fact charge to wholesalers for their diabetes medications.  The County never alleges otherwise—much less with the particularity required by Rule 9(b) for claims of fraud.  *See Lynch*, 232 F. Supp. 3d at 466 (dismissing RICO claims).

Stripped of rhetoric, the County's complaint about the Manufacturer Defendants' reported list prices is that those prices did not reflect either rebates to PBMs or the Manufacturers' ultimate profits on particular medications.  But the Manufacturer Defendants *never* said that their reported list prices accounted for rebates or reflected their profit margins.  Nor could they have said that.  Federal law unambiguously states that a "manufacturer's list price" does "not includ[e] prompt pay or other discounts, rebates or reductions in price."  42 U.S.C. §1395w-3a(c)(6)(B).  The County never disputes that the list prices the Manufacturer Defendants published were in fact perfectly in keeping with the federal definition.  Nor does the County say what it thinks the Manufacturer Defendants *should* have reported instead of these list prices—presumably because the federal definition would have precluded the Manufacturers from reporting any prices other than those that they did report.  The County's Amended RICO Statement, which alludes in a vague and conclusory fashion to announcements in March 2023 that each Manufacturer would be reducing the list price of certain insulin products, suffers from the same deficiencies.  ECF No. 146 at 3-5.  Even if those announcements had any relevance to the allegations in the complaint, which they do not, the County still fails to allege any way in which those announcements would "suggest that the prices of [those] medications before March 1, 2023, were not inflated in order to cover costs of research and development, manufacture, distribution, or any other necessary expense."  *Id.*

At bottom, the Manufacturer Defendants cannot possibly have deceived the County by reporting WAC prices that were exactly what federal law required them to report—i.e., the prices that they charged wholesalers for their medications.  The County may have preferred that the Manufacturer Defendants also report their net prices in addition to WAC.  But "[t]he two are entirely different measures," and "[t]here is nothing inherently improper" about the WAC prices that the Manufacturers reported.  *Xerion Ptns, I LLC v. Resurgent Asset Mgmt.*, 474 F. Supp. 2d 505, 518 (S.D.N.Y. 2007).

## 2.    The Amended Complaint Fails To Plead Fraud with Particularity

Independently, the County fails to allege "in respect of *each* individual defendant" everything that Rule 9(b) requires for claims of fraud.  *Leslie v. Minson*, 679 F. Supp. 280, 284 (S.D.N.Y. 1988) (emphasis added).  Those requirements include: (1) "precisely what statements were made in what documents or oral representations or what omissions were made"; (2) "the time and place of each such statement and the person responsible for making [it]"; (3) "the content of such statements and the manner in which they misled the plaintiff"; and (4) "what the defendants obtained as a consequence."  *Id.*  The allegations here are deficient on several fronts.

*First*, the County engages in collective pleading against all of the Manufacturer Defendants instead of making the necessary allegations "in respect of each individual defendant."  *Id.*  The few allegations that purport to identify Manufacturer-specific statements or conduct all describe allegedly *truthful* representations.  *E.g.*, Am. Compl. ¶¶ 332-34, 42-43 (collecting Manufacturer Defendant testimony).  In sharp contrast, the Amended Complaint contains no such specificity when it tries to allege *untruthful* statements.  Indeed, rather than identify which Manufacturer allegedly made what false statements—in particular, the publication of supposedly "false list price[s]"—all precision disappears and the Amended Complaint collapses the Manufacturer Defendants into the tellingly vague "Defendants."  *E.g., id.* ¶¶ 18,

411-19.  That is true even of the Amended Complaint's core allegations that "The Manufacturer

Defendants Deceived Plaintiff"—nearly all of which simply refer to the "Manufacturer

Defendants" writ large.  *Id.* ¶¶ 411-25.  That approach is irreconcilable with Rule 9(b).  *Leslie*,

679 F. Supp. at 284.

       *Second*, and independently, the Amended Complaint would still fail Rule 9(b) even if it

were directed against a single Manufacturer Defendant.  The Amended Complaint *never*

identifies (among other things) "the time and place of each such statement [of WAC price]" or

the "precise[] . . . documents" in which those statements were made.  *Id.*  Rather, the County

relies on vague allegations that the "Manufacturer Defendants published the prices generated by

the Insulin Pricing Scheme throughout the United States and New York through publishing

compendia, in various promotional and marketing materials distributed by entities downstream in

the drug supply chain, and directly to pharmacies."  Am. Compl. ¶ 416.  These allegations—

which fail to specify the "time or place" of *any* statement or the "precise" document in which

any statement was made—are inadequate under Rule 9(b).  *Leslie*, 679 F. Supp. at 284.  Absent

specific allegations of deceit—including what each Manufacturer said, to whom they said it, and

the times and places of such representations—Rule 9(b) requires dismissal.

    **D.**    **The County Fails To Plead that the Manufacturer Defendants Operated or
Managed a RICO Enterprise**

       The County's RICO claims should be dismissed for the additional reason that the

Amended Complaint fails to allege that the Manufacturer Defendants participated in a RICO

enterprise.  The Amended Complaint alleges the defendants formed six pairs of associations-in-

fact, each consisting of one Manufacturer and one PBM.  Am. Compl. ¶ 513.  But the Amended

Complaint fails to plausibly allege that the Manufacturer Defendants operated or managed any of

the supposed enterprises' affairs.

RICO liability under Section 1962(c) is limited to individuals that "participate in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993); *see also Abbott Labs. v. Adelphia Supply USA*, 2017 WL 57802, at *6 (E.D.N.Y. Jan. 4. 2017). The conduct requirement for a RICO claim is "a very difficult test to satisfy." *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 164 (S.D.N.Y. 2003). And settled law makes clear that the County cannot allege that the Manufacturer Defendants' conduct constituted a RICO enterprise by pointing to their ordinary-course business practices. As courts have held, where a plaintiff's allegations "are entirely consistent with . . . each [enterprise member] going about its own business" within "the bounds of the parties' normal commercial relationships," this requirement is unsatisfied. *United Food & Com. Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 855-56 (7th Cir. 2013); *see also Abbott*, 2017 WL 57802, at *8.

All the County alleges here are "normal commercial relationships." *United Food*, 719 F.3d at 855. As the Amended Complaint alleges, Manufacturers set list prices and pay rebates to PBMs, and PBMs are hired by health plans (like Albany County) to determine formulary placement for the Manufacturers' medications. Am. Compl. ¶¶ 263-68. That is the Manufacturers' and PBMs' *business*, not a RICO "enterprise." Rebates are well-known, and they have been endorsed by both the federal government and Albany County itself. *See, e.g.*, 42 U.S.C. § 1396r-8(a) (2016) (requiring manufacturers to pay rebates to the Medicaid program as a condition of providing insurance coverage for the manufacturer's medications); Patient Protection and Affordable Care Act, Pub. L. 111-148, § 2501(c), 124 Stat. 119 (2010) (substantially increasing the amount of Medicaid rebates that manufacturers must pay). There is simply no indication, in the Amended Complaint or otherwise, that the payment of rebates

constituted a RICO enterprise or anything beyond normal, self-interested "competi[tion] for business." *United Food*, 719 F.3d at 856; *see also Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 304 (E.D.N.Y. 2017) (concluding that, even if plaintiffs "adequately pled the defendants had 'worked together in some respects to steal the plaintiffs' funds,' there were no plausible allegations 'that they did so to advance the agenda of their purported enterprise or for any shared purpose.'" (citation omitted)).

Indeed, federal courts have recognized for decades that insurers often negotiate "rebate[s] or discounts from manufacturers in exchange for an agreement that the manufacturer's drug, and not a similar drug made by a competitor, will be included on the [insurance] formulary." *Wal-Mart Stores, Inc. v. Knickrehm*, 101 F. Supp. 2d 749, 760 n.6 (E.D. Ark. 2000). The County offers nothing that would make it plausible to believe that three competing manufacturers— which all fight for market share in an intensely competitive market—each conducted a RICO enterprise with the same PBMs.

### E.   The County's RICO Conspiracy Claim Fails Because the Underlying RICO Allegations Fail

The County also alleges that Defendants violated § 1962(d) by "agreeing and conspiring to violate 18 U.S.C. § 1962(c)." Am. Compl. ¶ 571. It is well established that "a § 1962(d) claim must be dismissed if the complaint does not adequately allege 'an endeavor which, if completed, would satisfy all of the elements of a substantive [RICO] offense.'" *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 373 (3d Cir. 2010) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)). Because, as noted above, the County has not brought and cannot bring a valid RICO claim, its RICO conspiracy claim fails as well.

## III.   Albany County Fails To State a GBL Claim

The County also fails to state a GBL claim because the Amended Complaint fails to allege any materially misleading conduct that caused the County injury, alleges only derivative injuries contingent on harms to third parties, and fails to allege any in-state misconduct by any Manufacturer Defendant.  Each deficiency independently requires dismissal.

## A. The Amended Complaint Fails To Allege Misleading Conduct that Caused the County Any Injury

The County's GBL claim should be dismissed because the Amended Complaint does not allege that the Manufacturer Defendants engaged in any materially misleading conduct, let alone conduct that caused the County any injury.  GBL § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade, or commerce."  N.Y. Gen. Bus. Law § 349(a).  A plaintiff asserting a section 349 claim must "allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice."  *City of New York v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009).  The County cannot satisfy either the second or third elements of this test.

*First*, the GBL claim fails to allege the Manufacturer Defendants made any "materially misleading" statements for the same reasons the County fails to allege mail and wire fraud.  New York courts hold "it is well settled" that this question can be resolved on a motion to dismiss.  *Dwyer v. Allbirds, Inc.*, 2022 WL 1136799, at *5 (S.D.N.Y. Apr. 18, 2022) (quotation marks and citation omitted).  As explained above, the Amended Complaint does not identify any specific allegedly misleading statement or misrepresentation made by any Manufacturer Defendant, whether to the County or otherwise.  Rather, the Amended Complaint concedes that the Manufacturer Defendants reported list prices as required by federal law.  And the Amended Complaint does not allege that the Manufacturer Defendants ever suggested that their list prices excluded rebates.  Thus, the Amended Complaint fails to plead any representation made by any

Manufacturer Defendant that "could be likely to mislead a reasonable customer," and the Court
should dismiss the GBL claim accordingly.  *See Sutherland v. Remax 2000*, 2008 WL 3307201,
at *4-5 (N.Y. Sup. Ct. Aug. 7, 2008); *Dwyer*, 2022 WL 1136799, at *5 (granting motion to
dismiss and explaining that "Plaintiff does not allege that . . . Defendant falsely describes the
way it undertakes [carbon footprint] calculations"); *see also Gordon v. Target Corp.*, 2022 WL
836773, at *10 (S.D.N.Y. Mar. 18, 2022) ("Plaintiff has failed to actually identify a material
misstatement or omission . . . that would deceive a reasonable consumer, which is fatal to her
claim.").

     *Second*, even if the County's generalized, group pleading approach were sufficient to
allege materially misleading conduct, the Amended Complaint makes clear that the Manufacturer
Defendants' actions had no connection to the County or its alleged injury.  According to the
Amended Complaint, the Manufacturer Defendants misled the public by publishing "false" list
prices for their diabetes medications in national pricing compendia.  Am. Compl. ¶¶ 411-25.  But
the Amended Complaint lacks any factual allegation that anyone—including the County—was
influenced by this conduct.  And because the Amended Complaint does not allege any
misrepresentations made by the Manufacturer Defendants, it necessarily fails to show that the
County "suffered injury as a result" of any such misrepresentations.  *Smokes-Spirits.com*, 911
N.E.2d at 838; *Sutherland*, 2008 WL 3307201, at *4-5 ("generalized allegations of false
advertising" that plaintiff neither "observed [n]or was influenced by" insufficient to plead
causation under the statute); *cf. Gale v. Int'l Bus. Machines Corp.*, 781 N.Y.S. 2d 45, 47 (App.
Div. 2004) ("If the plaintiff did not see any of [the allegedly misleading] statements, they could
not have been the cause of his injury, there being no connection between the deceptive act and

the plaintiff's injury."); *see also Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 610-11 (D.N.J. 2016).

Finally, the County's claim fails for the additional independent reason that it cannot show injury. *Smokes-Spirits.com*, 911 N.E.2d at 838. Because the County received 100% of the rebates its PBM received from pharmaceutical manufacturers, the Amended Complaint in fact shows that the County directly *benefited* from the conduct it now attacks.

### B.    Albany County's GBL Claim Fails Because the County Only Asserts Derivative Injuries

As with its RICO claims, the County lacks standing under the GBL because "its claimed injury is . . . entirely derivative of injuries suffered by" more direct customers. *Smokes-Spirits.com*, 911 N.E.2d at 838 ("[D]erivative actions are barred under section 349(h)." (citation omitted)). "An injury is indirect or derivative when the loss arises solely as a result of injuries sustained by another party." *Id.* Accordingly, a plaintiff cannot state a GBL claim if it is alleging harm based on an injury suffered by a third party. *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1144-45 (N.Y. 2004) ("[A] third-party payer has no standing to bring an action under General Business Law § 349 because its claims are too remote."); *see also Smokes-Spirits.com*, 911 N.E.2d at 838-39 (City of New York lacked standing to assert claims based on lost tax revenue as they were "purely contingent on harm to third part[y]" cigarette purchasers).

As the Amended Complaint makes clear, the medications that the County purchases—from entities other than the Manufacturer Defendants—are not for itself. Instead, the County subsidizes the purchase of those medications for third-party beneficiaries—i.e., the County's employees, who actually purchase and use the medications. Am. Compl. ¶¶ 456, 59-60. Those employees (and their physicians) made the decision about what product to purchase. But settled

law does not allow the County to recover for an injury derived from another person's decisions. *See Smokes-Spirits.com*, 911 N.E.2d at 838-39.  Because the County's payments for the at-issue medications are entirely contingent on the purchases made by its employees, Albany County lacks standing to assert a GBL claim.  *See Blue Cross*, 818 N.E.2d at 1145.

> **C.    The Amended Complaint Fails To Allege Any Deceptive Acts Occurred in New York**

Albany County's GBL claim fails for the separate reason that the Amended Complaint does not allege that any prohibited act or misrepresentation occurred in the state of New York. The GBL prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . in [New York] state . . . ."  General Business Law § 349(a).  This means that "to qualify as a prohibited act under [GBL § 349], the deception of a consumer must occur in New York."  *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E. 1190, 1195-96 (N.Y. 2002).  As explained above, the Amended Complaint does not identify *any* deceptive act or misrepresentation by *any* Manufacturer Defendant.  *Supra* at Section III.A.  But even more clearly, it alleges no such conduct that occurred within New York.  For that reason, too, the GBL claim necessarily fails.

> **IV.   The Unjust Enrichment Claim Fails Because a Contract Governs the Subject of the Dispute and the County Did Not Directly Benefit the Manufacturer Defendants**

Albany County's unjust enrichment claim fares no better.  Because unjust enrichment is a quasi-contract remedy, a plaintiff cannot bring unjust enrichment claims if a valid contract governs the subject matter of dispute.  *See MG West 100 LLC v. St. Michael's Protestant Episcopal Church*, 8 N.Y.S.3d 299, 301 (App. Div. 2015); *Clark-Fitzpatrick, Inc. v. L.I.R.R.*, 516 N.E.2d 190, 193 (N.Y. 1987).  That is precisely the situation here, as the Amended Complaint makes clear that Albany County entered into at least three separate contracts with PBM Defendants or their predecessors for PBM services that cover the rebating practices at issue (and, as noted above, provide the County with 100% of the challenged rebates since 2010).  Am.

34

Compl. ¶¶ 465-72; *see also* ECF No. 137-1; ECF No. 137-2; ECF No. 137-3.  To the extent Albany County is unhappy with the terms of those agreements, that contract dispute should be raised with the County's relevant counterparties.  But Albany County's apparent dissatisfaction with the terms of its PBM agreement does not empower it to sidestep available remedies and seek recovery under quasi-contract theories like unjust enrichment.

The unjust enrichment claim separately fails because the Amended Complaint never alleges that the Manufacturer Defendants received a direct benefit from the County.  The Amended Complaint vaguely states that the "Defendants wrongfully secured and retained unjust benefits from Plaintiff Albany County in the form of amounts paid for diabetes medications and fees and payments collected."  Am. Compl. ¶ 596.  But as the Amended Complaint makes clear, the County is an indirect purchaser that had no direct relationship—financial or otherwise—with any of the Manufacturer Defendants.  Because "this type of indirect benefit is insufficient to sustain an unjust enrichment claim" under New York law, *Prime Mover Capital Partners L.P. v. Elixir Gaming Techs., Inc.*, 898 F. Supp. 2d 673, 697 (S.D.N.Y. 2012), the Court should follow the decisions of district courts in other cases involving insulin pricing and dismiss the County's unjust enrichment claim.  *See City of Miami v. Eli Lilly & Co.*, 2022 WL 198028, at *9-10 (S.D. Fla. Jan. 21, 2022); *MSP Recovery Claims, Series, LLC*, 2019 WL 1418129, at *20.

## <u>CONCLUSION</u>

For all of these reasons, the Manufacturer Defendants respectfully request that the Court dismiss Albany County's claims against them.  And because the County has "already had an opportunity to amend [its complaint] in response to the deficiencies pointed out by [defendants'] motion to dismiss," the Amended Complaint should be dismissed with prejudice.  *Bui v. Indus. Enters. of Am., Inc.*, 594 F. Supp. 2d 364, 373 (S.D.N.Y. 2009).

Dated:    April 14, 2023                          Respectfully submitted,

                                                  **DAVIS POLK & WARDWELL LLP**

                                                  By:*/s/ Neal A. Potischman*
                                                       Neal A. Potischman (Bar Roll No. 703970)
                                                       Andrew Yaphe (admitted *pro hac vice*)
                                                       Ian Hogg (admitted *pro hac vice*)
                                                       1600 El Camino Real
                                                       Menlo Park, California 94025
                                                       Tel.: (650) 752-2000
                                                       Fax: (650) 752-2111
                                                       Email: neal.potischman@davispolk.com
                                                              andrew.yaphe@davispolk.com
                                                              ian.hogg@davispolk.com

                                                       Chui-Lai Cheung (Bar Roll No. 703971)
                                                       DAVIS POLK & WARDWELL LLP
                                                       450 Lexington Avenue
                                                       New York, New York 10017
                                                       Tel.: (212) 450-4000
                                                       Fax.: (212) 701-5800
                                                       Email: chui-lai.cheung@davispolk.com

                                                       *Attorneys for Defendant*
                                                       *Novo Nordisk Inc.*

**KIRKLAND & ELLIS LLP**

By: */s/ James F. Hurst*
    James F. Hurst, P.C. (admitted PHV)
    Andrew A. Kassof, P.C.
      (Bar Roll No. 704030)
    Diana M. Watral, P.C. (admitted PHV)
    Ryan J. Moorman (admitted PHV)
    Jason A. Feld (admitted PHV)
    300 North LaSalle
    Chicago, IL 60654
    Telephone: +1 312 862 2000
    Facsimile: +1 312 862 2200
    Email: james.hurst@kirkland.com
    Email: akassof@kirkland.com
    Email: diana.watral@kirkland.com
    Email: ryan.moorman@kirkland.com
    Email: jason.feld@kirkland.com

**PHILLIPS LYTLE LLP**

By: */s/ Peter A. Bellacosa*
    Peter A. Bellacosa (Bar No. 511186)
    Omni Plaza
    30 South Pearl Street
    Albany, NY 12207-1537
    Tel: (518) 618-1223
    Fax: (518) 472-1227
    Email: pbellacosa@phillipslytle.com

*Attorneys for Eli Lilly and Company*

**JONES DAY**

By: */s/ Aaron M. Healey*
    Aaron M. Healey (Bar Roll No. 703979)
    250 Vesey Street
    New York, NY 10281-1047
    Tel.: (212) 326-3939
    Fax: (212) 755-7306
    Email: ahealey@jonesday.com

    William D. Coglianese *(pro hac vice*
    pending)
    51 Louisiana Avenue NW
    Washington, DC 20001
    Tel.: (202) 879-3710
    Fax: (202) 626-1700
    Email: wcoglianese@jonesday.com

*Attorneys for Sanofi-Aventis U.S. LLC*