**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| COUNTY OF ALBANY, NEW YORK, | |
| *Plaintiff,* | |
| v. | Case No. 1:22-cv-00981 (CFH) |
| ELI LILLY AND COMPANY, *et al.*, | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION TO DISMISS CLAIMS AGAINST CVS CAREMARK DEFENDANTS FOR**
**FAILURE TO STATE A CLAIM**

GREENBERG TRAURIG, LLP
54 State Street, Sixth Floor
Albany, New York 12207
Tel: (518) 689-1400
Fax: (518) 689-1499

WILLIAMS & CONNOLLY LLP
680 Maine Avenue, SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029

*Attorneys for CVS Health Corporation, CVS*
*Pharmacy, Inc., Caremark RX, LLC, CaremarkPCS*
*Health, LLC, and Caremark, LLC*

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 2

    A.    The County's Allegations ..................................................................... 2

    B.    The County's 2006 Sponsor Agreement with CVS Caremark ............................... 3

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT ................................................................................................................... 4

I.    THE COUNTY'S CLAIMS AGAINST CVS CAREMARK VIOLATE THE
2006 SPONSOR AGREEMENT'S FORUM-SELECTION CLAUSE. ........................... 4

II.    THE 2006 SPONSOR AGREEMENT DEMONSTRATES CVS CAREMARK
HAS NOT ENGAGED IN ANY DECEPTION OR INJURED THE COUNTY. ............. 7

III.    THE COUNTY'S CLAIMS ARE TIME-BARRED. .......................................... 8

    A.    The RICO Claims Are Time Barred in Their Entirety. ......................................... 8

    B.    The County's State-Law Claims Are Time-Barred. ............................................. 11

IV.    THE INDIRECT-PURCHASER RULE BARS THE COUNTY'S RICO
CLAIMS. ................................................................................................................ 12

V.    THE COUNTY FAILS TO PLEAD THE ELEMENTS OF A RICO CLAIM ............... 15

    A.    The County Has Not Alleged Predicate "Racketeering Activity" of Mail
and Wire Fraud under Rule 9(b)'s Heightened Pleading Requirements .............. 16

    B.    The County Has Not Alleged that Any RICO Acts Caused Its Alleged
Injury .................................................................................................................. 20

    C.    The County Has Failed to Plead a RICO Enterprise ........................................... 21

    D.    The County's RICO Conspiracy Claim Fails. ..................................................... 22

VI.     THE COUNTY HAS NO STANDING TO ASSERT ITS NYGBL CLAIM, NOR
        HAS IT SUFFICIENTLY ALLEGED THE CLAIM'S ELEMENTS. ............................ 22

VII.    THE COUNTY'S UNJUST ENRICHMENT CLAIM FAILS. ........................................ 23

VIII.   THE COURT SHOULD DISMISS ALL CLAIMS AGAINST CAREMARK'S
        CORPORATE PARENT AND UNINVOLVED AFFILIATE. ........................................ 24

# CASES

*Aerowest GmbH v. Freitag*,
  2016 WL 3636619 (E.D.N.Y. June 28, 2016) .......................................................21

*Anderson v. Rochester-Genesee Reg'l Transp. Auth.*,
  337 F.3d 201 (2d Cir. 2003)...............................................................................10

*Anza v. Ideal Steel Supply Corp.*,
  547 U.S. 451 (2006).............................................................................................16

*Apple Inc. v. Pepper*,
  139 S. Ct. 1514 (2019)........................................................................................12

*Arizona v. Shamrock Foods Co.*,
  729 F.2d 1208 (9th Cir. 1984) ...........................................................................15

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).............................................................................................4

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*,
  571 U.S. 49 (2013)...............................................................................................5

*Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.*,
  9 A.3d 1207 (Pa. Super. Ct. 2010)......................................................................6

*Bankers Tr. Co. v. Rhoades*,
  859 F.2d 1096 (2d Cir. 1988).............................................................................12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007).............................................................................................4

*Billy v. Consol. Mach. Tool Corp.*,
  412 N.E.2d 934 (N.Y. 1980)..............................................................................24

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
  818 N.E.2d 1140 (N.Y. App. Div. 2004)...................................................7, 22, 23

*Bongiorno v. Baquet*,
  2021 WL 4311169 (S.D.N.Y. Sept. 20, 2021)....................................................20

*Boyle v. United States*,
  556 U.S. 938 (2009).............................................................................................21

*Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*,
  2009 WL 928718 (E.D.N.Y. Mar. 31, 2009)................................................17, 20

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
   69 F. Supp. 3d 342 (S.D.N.Y. 2014)......................................................................16

*Chery v. Conduent Educ. Servs., LLC*,
   581 F. Supp. 3d 436 (N.D.N.Y. 2022)..................................................................23

*City of New York v. Smokes-Spirits.Com, Inc.*,
   911 N.E.2d 834 (N.Y. App. Div. 2009)................................................................23

*Conn. Gen. Life Ins. Co. v. Biohealth Labs., Inc.*,
   988 F.3d 127 (2d. Cir. 2021)...............................................................................23

*Crabhouse of Douglaston Inc. v. Newsday Inc.*,
   801 F. Supp. 2d 64 (E.D.N.Y. 2011) ..................................................................22

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013)................................................................................15

*D'Addario v. D'Addario*,
   901 F.3d 80 (2d Cir. 2018)..................................................................................21

*DeFalco v. Bernas*,
   244 F.3d 286 (2d Cir.2001).................................................................................16

*Don Lia v. Saporito*,
   909 F. Supp. 2d 149 (E.D.N.Y. 2012) ...................................................................8

*Drug Mart Pharmacy Corp. v. Am. Home Prod. Corp.*,
   2002 WL 31528625 (E.D.N.Y. Aug. 21, 2002)...................................................15

*E.J. Brooks Co. v. Cambridge Sec. Seals*,
   31 N.Y.3d 441 (2018) ...........................................................................................7

*Express Scripts, Inc. v. Kaleo, Inc.*,
   No. 4:17-CV-01520-RLW (E.D. Mo. 2017).........................................................10

*Fasano v. Yu Yu*,
   921 F.3d 333 (2d Cir. 2019)..................................................................................5

*Fero v. Excellus Health Plan, Inc.*,
   502 F. Supp. 3d 724 (W.D.N.Y. 2020) ...............................................................11

*First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)................................................................................21

*Flexborrow LLC v. TD Auto Fin. LLC*,
   255 F. Supp. 3d 406 (E.D.N.Y. 2017) ...........................................................18, 22

*Gaidon v. Guardian Life Ins. Co. of Am.*,
   750 N.E.2d 1078 (N.Y. App. 2001) ................................................................11, 12

*Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*,
   659 F.3d 221 (2d Cir. 2011) ..............................................................................5

*Graham v. HSBC Mortg. Corp.*,
   2019 WL 3066399 (S.D.N.Y. July 12, 2019) ..................................................8, 23

*Greenfish II, L.P. ex rel. Purplefish, LLC v. Int'l Portfolio, Inc.*,
   2012 WL 3024759 (E.D. Pa. July 24, 2012) ....................................................6

*Hale v. Stryker Orthopaedics*,
   2009 WL 321579 (D.N.J. Feb. 9, 2009) ..........................................................14

*Harris Cnty., Tex. v. Eli Lilly & Co.*,
   2022 WL 479943 (S.D. Tex. Feb. 16, 2022) ....................................................14

*Harris County, Texas. v. Eli Lilly & Co.*,
   2020 WL 5803483 (S.D. Tex. Sept. 29, 2020) ..................................................13

*Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*,
   2013 WL 3943267 (S.D.N.Y. July 31, 2013) ..................................................20

*Holmes v. Sec. Inv. Prot. Corp.*,
   503 U.S. 258 (1992) ........................................................................................12

*Illinois Brick Co. v. Illinois*,
   431 U.S. 720 (1977) ....................................................................................12, 15

*In re EpiPen Direct Purchaser Litig.*,
   2021 WL 147166 (D. Minn. Jan. 15, 2021) ....................................................24

*In re Insulin Pricing Litig.*,
   2019 WL 643709 (D.N.J. Feb. 15, 2019) ........................................................14

*In re Insulin Pricing Litig.*,
   2021 WL 5980629 (D.N.J. Dec. 17, 2021) ......................................................13

*In re Insulin Pricing Litig.*,
   Case No. 17-CV-699 (D.N.J. Feb. 2, 2017) ....................................................10

*Jordan v. Tilzer*,
   2022 WL 16544335 (2d Cir. Oct. 31, 2022) ....................................................22

*Kansas v. UtiliCorp United, Inc.*,
   497 U.S. 199 (1990) ........................................................................................14

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012)..................................................................................8

*Laumann v. Nat'l Hockey League*,
   907 F. Supp. 2d 465 (S.D.N.Y. 2012)..................................................................14

*Laydon v. Mizuho Bank, Ltd.*,
   2014 WL 1280464 (S.D.N.Y. Mar. 28, 2014) .......................................................7

*LMC Indus. Contractors, Inc. v. Dominion Energy Transmission, Inc.*,
   2021 WL 3737727 (N.D.N.Y. Aug. 24, 2021) ......................................................5

*Marshall v. Hyundai Motor Am.*,
   51 F. Supp. 3d 451 (S.D.N.Y. 2014)....................................................................12

*Martinez v. Bloomberg LP*,
   740 F.3d 211 (2d Cir. 2014)..............................................................................5, 6

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993)................................................................................17

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
   No. 21-CV-674 (S.D. Miss. Aug. 15, 2022), slip op. ............................................24

*Mississippi ex rel. Fitch v. Eli Lilly & Co.*,
   2022 WL 18401603 (S.D. Miss. Aug. 29, 2022)...................................................25

*Moeckel v. Caremark Rx Inc.*,
   385 F. Supp. 2d 668 (M.D. Tenn. 2005)..............................................................24

*MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*,
   2019 WL 1418129 (D.N.J. Mar. 29, 2019)..........................................................13

*Ortho-Clinical Diagnostics, Inc. v. Mazuma Cap. Corp.*,
   2019 WL 1082987 (W.D.N.Y. Mar. 7, 2019)..........................................................5

*Paper Sys. Inc. v. Nippon Paper Indus.*,
   281 F.3d 629 (7th Cir. 2002) ..............................................................................15

*Petroff Amshen LLP v. Alfa Rehab PT PC*,
   2021 WL 960394 (E.D.N.Y. Mar. 15, 2021),..................................................21, 22

*Phillips v. Audio Active Ltd.*,
   494 F.3d 378 (2d Cir. 2007).................................................................................5

*Pilarczyk v. Morrison Knudsen Corp.*,
   965 F. Supp. 311 (N.D.N.Y. 1997)......................................................................24

*Powers v. British Vita, P.L.C.*,
    57 F.3d 176 (2d Cir. 1995) .................................................................................17

*Puttick v. Am. Online, Inc.*,
    2007 WL 1522612 (S.D.N.Y. May 23, 2007) .......................................................11

*Rapoport v. Asia Elecs. Holding Co.*,
    88 F. Supp. 2d 179 (S.D.N.Y. 2000) .....................................................................8

*Richards v. Direct Energy Servs., LLC*,
    915 F.3d 88 (2d. Cir. 2018) ................................................................................23

*Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*,
    151 F. Supp. 2d 371 (S.D.N.Y. 2001) ...................................................................8

*Rotella v. Wood*,
    528 U.S. 549 (2000) ............................................................................................8

*Sanchez v. ASA Coll., Inc.*,
    2015 WL 3540836 (S.D.N.Y. June 5, 2015) .......................................................20

*Schlesinger v. Schlesinger*,
    2007 WL 9706976 (E.D.N.Y. Feb. 8, 2007) ........................................................20

*Schnell v. Conseco, Inc.*,
    43 F. Supp 2d 483 (S.D.N.Y. 1999) ....................................................................17

*Smay v. E.R. Stuebner, Inc.*,
    864 A.2d 1266, 1274 (Pa. Super. Ct. 2004) ........................................................6

*Spiro v. Healthport Techs., LLC*,
    73 F. Supp. 3d 259 (S.D.N.Y. 2014) ...................................................................11

*Staehr v. Hartford Fin. Servs. Group, Inc.*,
    547 F.3d 406 (2d Cir.2008) .................................................................................9

*Sykes v. Mel S. Harris & Assocs. LLC*,
    780 F.3d 70 (2d Cir. 2015) ................................................................................15

*Town of Islip v. Datre*,
    245 F. Supp. 3d 397 (E.D.N.Y. 2017) ............................................................17, 18

*TradeComet.com LLC v. Google, Inc.*,
    647 F.3d 472 (2d Cir. 2011) ................................................................................5

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ............................................................................................24

*United States v. Turkette*,
  452 U.S. 576 (1981) ...................................................................................21

*Voters for Animal Rts. v. D'Artagnan, Inc.*,
  2021 WL 1138017 (E.D.N.Y. Mar. 25, 2021) .......................................23

*Williams v. Affinion Grp., LLC*,
  889 F.3d 116 (2d Cir. 2016) .................................................................4, 16

*World Wrestling Ent., Inc. v. Jakks Pac., Inc.*,
  328 F. App'x 695 (2d Cir. 2009) .................................................................9

## RULES

Fed. R. Civ. P. 8(a) .........................................................................................4

Fed. R. Civ. P. 9(b) ................................................................4, 16, 18, 20, 21

Fed. R. Civ. P. 12(b) .......................................................................................5

Fed. R. Civ. P. 12(b)(6) .................................................................................10

## STATUTES

18 U.S.C. § 1962 ...........................................................................................15

18 U.S.C. § 1962(d) ......................................................................................22

18 U.S.C. § 1964(c) .........................................................................................7

New York General Business Law (NYGBL) § 349 .....................2, 7, 8, 11, 12, 22, 23

## INTRODUCTION

The County of Albany (the "County") alleges that insulin manufacturers Eli Lilly, Novo Nordisk, and Sanofi (the "Manufacturer Defendants") conspired with each other and separately with three pharmacy benefit managers ("PBMs"), CVS Caremark,[1] Express Scripts, and OptumRx (the "PBM Defendants"), to increase insulin prices in exchange for undisclosed rebate payments from the manufacturers to the PBMs.  The County claims this so-called "Insulin Pricing Scheme" violates federal racketeering laws, as well as New York statutory and common laws.  But the County has not alleged facts supporting its imagined "scheme," and the business practices the County challenges are standard, well-known, and legitimate.  The County itself for decades has negotiated and contracted for rebates, including as far back as the 2006 Sponsor Agreement with an alleged predecessor of CVS Caremark.

The Amended Complaint suffers from numerous fatal legal defects.  *First*, the County filed its claims against CVS Caremark in the wrong forum.  Under the parties' contract, the County was required to file any such claims in Pennsylvania.  Doc. 137-1 at, § XV(F).  *Second*, the County cannot prove any deception or injury related to CVS Caremark because under the parties' contract, CVS Caremark was required to pass any rebate amounts it received "in entirety" to the County. *Id*. § VIII(B).  In addition, the parties' contract shows that a third party (WellPoint Pharmacy Management)—not CVS Caremark—was charged with handling "rebate contracting functions" with "pharmaceutical manufacturers," including "negotiation of rebate arrangements on behalf of Sponsor [the County]."  *Id*. § VIII(A), (C).  *Third*, the County's claims are time-barred because

---

[1] The moving Defendants are CVS Health Corporation ("CVS Health"), CVS Pharmacy, Inc. ("CVS Pharmacy"), Caremark Rx, L.L.C., CaremarkPCS Health, L.L.C., and Caremark, L.L.C. Consistent with the Complaint, this brief refers to those entities as "CVS Caremark" or as part of the "PBM Defendants," even though certain of them are not PBMs.

CVS Caremark has not provided any "at-issue" PBM services to the County for more than a decade, and the County has been on notice of potential claims since 2017 at the latest. *Fourth*, longstanding precedent bars the County, an indirect purchaser, from suing for any alleged overcharges. *Fifth*, the County's sprawling criticisms of the healthcare system are not well-pled factual allegations of a criminal enterprise or conspiracy. *Sixth*, as a third-party payor, the County lacks standing to recover derivatively under the New York General Business Law ("NYGBL"). *Seventh*, the County's claim for unjust enrichment fails because the County's allegations concern its contracts. *Finally*, the County's claims against a corporate parent (CVS Health) and uninvolved affiliate (CVS Pharmacy) fail because the County alleges no facts implicating those entities in the challenged conduct.

## **BACKGROUND**

### A.      **The County's Allegations**

The Manufacturer Defendants are pharmaceutical companies that research, develop, manufacture, and sell prescription drugs, including insulin and other diabetic medications. First Amended Complaint ("FAC") ¶¶ 240, 242. They set the list prices for their products. *Id*. ¶¶ 12, 17.

CVS Caremark, Express Scripts, and OptumRx are PBMs. In addition to other services, PBMs develop lists of approved drugs, called "formularies," that their clients, including health plans and other third-party payors like the County, can adopt. FAC ¶¶ 319, 409, 435. Payors authorize PBMs to negotiate discounts off the list prices set by manufacturers, *id*. ¶¶ 17, 270-72, and PBMs negotiate reduced rates for their clients by securing rebates from manufacturers, *id*. ¶ 278. The PBM-payor contracts define what payments from manufacturers to PBMs constitute "rebates" and what percentage must be passed from the PBM to the payor. *Id*. ¶¶ 354-55.

The County alleges that the Manufacturer Defendants pay "secret" rebates in exchange for preferred formulary placement because formulary position affects insurance coverage and, in turn, drug utilization.  FAC ¶¶ 23, 436, 516.  The County claims that the Manufacturer Defendants fund the rebates by increasing their list prices for insulin and paying PBMs a portion of the increased revenue, which PBMs allegedly do not pass on to payors.  *Id.* ¶¶ 318-19.

According to the County, it has been harmed in its capacity as a reimbursor for the at-issue drugs because it "unknowingly" reimbursed too much for the diabetes medications sold to its beneficiaries, including when CVS Caremark provided PBM services to the County from 2006 to 2010.  FAC ¶¶ 404, 461-63, 476, 583.  The County, however, admits that CVS Caremark has not provided the County with PBM services in over a decade.  *Id.* ¶ 463.

### B.     The County's 2006 Sponsor Agreement with CVS Caremark

The County alleges that it entered into a contract for the "at-issue" PBM services with a CVS Caremark predecessor from 2006 to 2010.  FAC ¶¶ 404, 462.  This contract is a "Sponsor Agreement" with PharmaCare Management Services, Inc ("PharmaCare").[2]  Doc. 137-1.  Under it, CVS Caremark provided certain PBM services, such as claim processing services related to the County's prescription drug program, in exchange for "administrative fees."  Doc. 137-1, §§ III, VIII(H).  But a third party, WellPoint Pharmacy Management ("WellPoint"), was separately engaged to handle "formulary development and rebate contracting functions," including "negotiat[ing] rebate arrangements on behalf of Sponsor [the County]."  *Id.* § VIII(A), (C).  The contract required WellPoint to negotiate and then receive rebates from manufacturers, and the amount of rebates WellPoint transferred to CVS Caremark was in turn "pass[ed] in entirety" to the

---

[2] The 2006 Sponsor Agreement "binds and inures" to any "permitted successors and assignees," which would include "any entity which succeeds to PharmaCare's business through a sale, merger, or other similar corporate change transaction."  Doc. 137-1, § XV(A).  The County alleges that "PharmaCare is now owned by Defendant CVS Caremark."  FAC ¶ 461.

County.  *Id.* § VIII(A), (B).  WellPoint, for its services, separately received fees explicitly set forth in the contract.  *Id.* § VIII(C).  The contract is governed by Pennsylvania law, and the parties agreed to litigate disputes in Pennsylvania, where PharmaCare had operations.  *Id.* § XV(F).

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The allegations "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level."  *Twombly*, 550 U.S. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  In a case alleging conspiracy, the "need at the pleading stage for allegations plausibly suggesting (not merely consistent with) agreement reflects Rule 8(a)(2)'s threshold requirement that the 'plain statement' possess heft 'to show that the pleader is entitled to relief.'" *Twombly*, 550 U.S. at 557.

The County's fraud claims also must satisfy Rule 9(b)'s heightened pleading standard.  The County must allege with particularity "the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Williams v. Affinion Grp.,* LLC, 889 F.3d 116, 124 (2d Cir. 2016).

## ARGUMENT

## I.   THE COUNTY'S CLAIMS AGAINST CVS CAREMARK VIOLATE THE 2006 SPONSOR AGREEMENT'S FORUM-SELECTION CLAUSE.

In the parties' 2006 Sponsor Agreement, the County agreed to a clear forum-selection clause that requires any "action or proceeding by or against either party with respect to or arising out of th[e] Agreement" to be "instituted and litigated in the state or federal courts located in the Commonwealth of Pennsylvania."  Doc. 137-1, § XV(F).  Rather than abiding by its commitments

and filing its claims in Pennsylvania as required, the County has attempted to proceed in this Court. That is plainly improper as to CVS Caremark, and the claims against CVS Caremark should be dismissed.[3]

In the Second Circuit, "[t]he enforcement of a forum selection clause through a Rule 12(b) motion to dismiss is a well-established practice." *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011); *see LMC Indus. Contractors, Inc. v. Dominion Energy Transmission, Inc.*, 2021 WL 3737727, at *1 (N.D.N.Y. Aug. 24, 2021). In a contract between sophisticated parties, as here, a forum-selection clause is enforceable if it is reasonably communicated to the opposing party, mandatory, and applicable to the claims and parties to the dispute. *Fasano v. Yu Yu*, 921 F.3d 333, 335 (2d Cir. 2019). All requirements are satisfied here.

*First*, the forum selection clause was communicated to the County. In April 2006, the Assistant County Attorney, who was representing the County in connection with these negotiations, provided CVS Caremark with a copy of the 2006 Sponsor Agreement executed by the Albany County Executive and Deputy County Executive. Doc. 137-1, p. 2.

*Second*, the clause is mandatory. It confers exclusive jurisdiction on courts in Pennsylvania through "clear exclusionary or obligatory language." *Glob. Seafood Inc. v. Bantry Bay Mussels Ltd.*, 659 F.3d 221, 225 (2d Cir. 2011); *see Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007) (holding the "use of the phrase 'are to be brought' establishes . . . an obligatory venue

---

[3] The Supreme Court did not alter this standard when it clarified the appropriate procedural vehicles to request a transfer pursuant to forum-selection clauses in *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 571 U.S. 49, 61 (2013). *See Martinez v. Bloomberg LP*, 740 F.3d 211, 216 n.3 (2d Cir. 2014); *LMC Indus. Contractors, Inc.*, 2021 WL 3737727, at *1; *Ortho-Clinical Diagnostics, Inc. v. Mazuma Cap. Corp.*, 2019 WL 1082987, at *4 (W.D.N.Y. Mar. 7, 2019).

for proceedings within the scope of the clause."). The clause uses unmistakably mandatory language: the County "shall" file in Pennsylvania. *See* Doc. 137-1, § XV(F).

*Third*, the forum-selection clause encompasses the County's claims, which concern PBM services CVS Caremark provided under the 2006 Sponsor Agreement. The forum-selection clause is broad, covering "*any* action or proceeding . . . *with respect to or arising out of*" the 2006 Sponsor Agreement. Doc. 137-1, § XV(F) (emphasis added). Under governing Pennsylvania law,[4] terms like "with respect to" and "arising out of" are interpreted broadly. *Smay v. E.R. Stuebner, Inc.*, 864 A.2d 1266, 1274 (Pa. Super. Ct. 2004) (finding that "the broad contract language" requiring parties to arbitrate "[a]ny controversy or [c]laim arising out of or related to the [c]ontract" manifested "clear intent to resolve the instant dispute in arbitration.").

Given the breadth of the parties' chosen language, the County's claims "need only concern [PBM services] subject to the [2006 Sponsor] Agreement" to fall within the clause. *Greenfish*, 2012 WL 3024759, at *5; *see also Autochoice Unlimited, Inc. v. Avangard Auto Fin., Inc.*, 9 A.3d 1207, 1212 (Pa. Super. Ct. 2010) (applying forum-selection clause to "cause of action framed as a tort but reliant upon contractual obligations"). Here, the County repeatedly alleges that its supposed injury relates to the "provi[sion of] PBM services to Plaintiff," which CVS Caremark provided only subject to the 2006 Sponsor Agreement. FAC ¶ 116; *see, e.g.*, *id*. ¶¶ 404, 461; *see also* Am. RICO Stmnt. at 11-12 (alleging misconduct in performance under 2006 Sponsor Agreement). The County is barred from bringing its claims against CVS Caremark in this forum.

---

[4] To determine whether claims are within the scope of a forum-selection clause, courts apply the law contractually selected by the parties. *Martinez*, 740 F.3d at 218. Here, the County selected Pennsylvania law. Doc. 137-1, § XV(F). "Pennsylvania courts apply the 'plain meaning rule' of interpretation of contracts which assumes that the intent of the parties to an instrument is embodied in the writing itself, and when the words are clear and unambiguous the intent is to be discovered only from the express language of the agreement." *Greenfish II, L.P. ex rel. Purplefish, LLC v. Int'l Portfolio, Inc.*, 2012 WL 3024759, at *5 (E.D. Pa. July 24, 2012).

## II.    THE 2006 SPONSOR AGREEMENT DEMONSTRATES CVS CAREMARK HAS NOT ENGAGED IN ANY DECEPTION OR INJURED THE COUNTY.

All of the County's claims require deception, proof of injury, or both.[5]  But the 2006 Sponsor Agreement makes clear that CVS Caremark has not engaged in the alleged deception, or injured the County with respect to rebate or other payments.

The County alleges that it was injured because, as the Manufacturer Defendants increased their list prices, PBMs received rebates and other payments from the Manufacturer Defendants that the PBMs supposedly did not pass through to the County.  *See* FAC ¶¶ 18, 352-57.

Those unsupported allegations run headlong into the parties' contract.  The 2006 Sponsor Agreement mandated that CVS Caremark pass any rebate amounts that it received from third-party WellPoint (who handled rebate arrangements on behalf of the County) "in entirety" to the County. Doc. 137-1, § VIII(B).  Thus, under this contract, CVS Caremark passed 100% of what it received in rebate payments to the County.  *Id.*  To the extent CVS Caremark was paid for its services, those payments are explicitly set forth as separate "administrative fees."  *Id*. § III(F).  There is nothing "secret" or deceptive about the payment structure to which the County agreed in 2006, and which continued until 2010, when the County switched providers.  FAC ¶ 463.

Additionally, the County's claims contradict the parties' contract because WellPoint, not CVS Caremark, was charged with negotiating rebate payments.  Doc. 137-1, § VIII(A), (C).  The parties' contract thus undermines the County's allegation that CVS Caremark was involved in a

---

[5] A RICO plaintiff must show that it was "injured . . . by reason of" the alleged violation. 18 U.S.C. § 1964(c).  Under § 349, "a plaintiff must allege . . . that [a deceptive] act or practice resulted in actual injury to a plaintiff."  *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (N.Y. App. Div. 2004).  To state a claim for unjust enrichment, the defendant must be unjustly enriched "'*at the expense of* the plaintiff.'"  *E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 457 (2018) (emphasis added); *see also Laydon v. Mizuho Bank, Ltd.*, 2014 WL 1280464, at *14 (S.D.N.Y. Mar. 28, 2014) (dismissing unjust enrichment claim because the complaint did not allege "how Defendants benefitted at Plaintiff's expense.").

"hide-the-ball system" to relabel formulary rebates under the 2006 Sponsor Agreement.  FAC ¶ 357.  Indeed, the County simply ignores that WellPoint, not CVS Caremark, negotiated "rebate arrangements on behalf of Sponsor."  Doc. 137-1, § VIII(A), (C).

As a result, the County cannot plead the requisite deception or injury to state a claim. *Rapoport v. Asia Elecs. Holding Co.*, 88 F. Supp. 2d 179, 184 (S.D.N.Y. 2000) (dismissing claims for securities fraud where documents plaintiffs' relied upon contradicted complaint); *Rieger v. Drabinsky (In re Livent Noteholders Sec. Litig.)*, 151 F. Supp. 2d 371, 427 (S.D.N.Y. 2001) (dismissing claims where plaintiffs' "pleadings [were] contradicted by the very public filings on which they rely, rendering [their] claim insufficient to withstand a motion to dismiss").

## III.   THE COUNTY'S CLAIMS ARE TIME-BARRED.

The Complaint also shows that the County's claims against CVS Caremark are time-barred. RICO claims are subject to a four-year statute of limitations.  *Rotella v. Wood*, 528 U.S. 549, 552 (2000).  Claims under NYGBL § 349 have a three-year limitations period. *Graham v. HSBC Mortg. Corp.*, 2019 WL 3066399, at *5 (S.D.N.Y. July 12, 2019).  And where, as here, a plaintiff seeks monetary damages, the limitations period for unjust enrichment is three years.  *Don Lia v. Saporito*, 909 F. Supp. 2d 149, 168 (E.D.N.Y. 2012).  This action was filed on September 16, 2022, after the limitations period expired for any RICO claim accruing before September 16, 2018, and any NYGBL or unjust enrichment claim accruing before September 16, 2019.

### A.   The RICO Claims Are Time Barred in Their Entirety.

The RICO statute of limitations begins to run when the "plaintiff discovered or should have discovered the injury." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012) (quotation marks omitted).  The limitations period "runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry." *World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 328 F. App'x 695, 696 (2d Cir. 2009)

(citing *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir.2008) (describing the "storm warnings" rule as "well-settled law in this Circuit").

Without identifying a relevant period of injury, the County alleges that its injuries include payment of "artificially inflated prices for diabetes medications" sold to its beneficiaries. FAC ¶ 536. But the County admits that CVS Caremark has not provided the "at-issue" PBM services to the County for more than a decade (i.e., since 2010). *Id*. ¶¶ 461-63. Any injury CVS Caremark could have caused occurred long before the limitations period.

In addition, the First Amended Complaint demonstrates that the County knew or should have known about the complained-of payment structure far more than four years before it filed its initial Complaint in this Court on October 16, 2022. First, as to the Manufacturer Defendants' alleged artificial inflation of their list prices—the linchpin of the entire scheme—the County alleges lockstep price increases have occurred over the course of the *last twenty years*. FAC ¶ 12; *see id*. ¶ 255 ("Between 2009 and 2015, for example, Sanofi and Novo Nordisk raised the list prices of their insulins in tandem 13 times."). Second, the supposed correlation between drug utilization rates and inclusion on a PBM's formulary, which allegedly motivates the Manufacturer Defendants to increase the list prices, is not alleged to be new. To the contrary: the materials the County cites in its own Amended Complaint establish that its claim is time-barred. The County, for example, cites a 2016 *Hill* article entitled, "How PBMs Make the Drug Price Problem Worse," that claimed PBMs have "perverse incentives" to inflate drug prices in exchange for higher rebates from drug manufacturers that PBMs "don't pass on to their consumers." *Id*. ¶ 341 n.38. Another 2016 article on "rebate-driven pricing structures" cited by the County reported that "drug companies are forced to bid against their competition by offering greater and greater rebates . . .

[t]o obtain a preferred spot on a PBM's formulary," and that "not every contract between payers and PBMs ensures that 100% of the rebate is returned to the payer." *Id.* ¶ 429 n.67.[6]

As one would expect in light of these allegations, the County's 2017 Requests for PBM Proposals "specifically requested that 'all proposals be quoted utilizing a "transparent pricing" model, meaning 'that the chosen provider will not retain any money associated with prescription drug rebates or any money associated with the margin between guaranteed reimbursement rates and the actual amount paid to the pharmacies.'" FAC ¶¶ 40, 466.

The County's pleadings tellingly overlap substantially with pleadings filed in earlier lawsuits challenging the same conduct, including a lawsuit filed more than five years ago in February 2017.[7] This further confirms that well before October 2018, the County knew—or should have known—about the alleged scheme it finally puts at issue here.

The County summarily seeks refuge in tolling doctrines. FAC ¶¶ 491-507. But the County cannot, on the one hand, rely on statements and articles published more than four years ago to support the existence of an alleged scheme and claim, on the other, that it "did not learn, and could not have learned, of the factual bases for its claims" until just "recently." *Id.* ¶ 491.

---

[6] Likely recognizing that the statute of limitations dooms its claims, the County amended its complaint to exclude certain other articles that likewise demonstrate that its claims are untimely. *See* Compl. ¶¶ 269, 333. Yet the County continues to rely on articles establishing that the rebating practices it challenges have long been publicized. And this Court, of course, can take judicial notice of the fact that the articles exist and that the County previously relied upon them.

[7] *See In re Insulin Pricing Litig.*, Case No. 17-CV-699 (D.N.J. Feb. 2, 2017) (Compl.). This Court may take judicial notice of relevant proceedings in other courts when ruling on a Rule 12(b)(6) motion. *Anderson v. Rochester-Genesee Reg'l Transp. Auth.*, 337 F.3d 201, 205 n.4 (2d Cir. 2003) (noting that a court may take judicial notice of official court records in a related proceeding and citing cases); *see also* FAC ¶ 395 & n.45 (relying on complaint in *Express Scripts, Inc. v. Kaleo, Inc.*, No. 4:17-CV-01520-RLW (E.D. Mo. 2017)).

The public record cited by the County itself created "storm warnings" that put it on notice of the alleged scheme over four years before it filed suit. *See Puttick v. Am. Online, Inc.*, 2007 WL 1522612, at *2 (S.D.N.Y. May 23, 2007). The RICO claims are therefore untimely.

### B.    The County's State-Law Claims Are Time-Barred.

The three-year limitations period governing the County's § 349 and unjust enrichment claims for damages[8] is triggered "'when all of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief.'" *Spiro v. Healthport Techs., LLC*, 73 F. Supp. 3d 259, 276 (S.D.N.Y. 2014) (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, N.E.2d 1078, 1083 (N.Y. 2001)). The claims accrue "'upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered.'" *Fero v. Excellus Health Plan, Inc.*, 502 F. Supp. 3d 724, 737 (W.D.N.Y. 2020). The County's discovery tolling allegations are thus inapplicable to its claims.

Here, the alleged "wrongful acts" giving rise to the County's claims against CVS Caremark occurred over a decade ago. The County alleges CVS Caremark injured the County because "[d]uring the relevant period, . . . CVS Caremark provided PBM services to the [County] and benefitted therefrom." FAC ¶ 560. Specifically, the County claims that in its role as the County's PBM, CVS Caremark "intentionally acted to conceal the payments it collected from the Manufacturer Defendants, labelling them as 'rebates,' administrative fees, and the like . . . ." Am. RICO Stmnt. at 6. This allegation is refuted by the 2006 Sponsor Agreement. But even accepting it as true, CVS Caremark could not have injured the County after it stopped providing PBM services in 2010. Here, the County's alleged injury occurred when it reimbursed CVS Caremark

---

[8] The County's allegations underlying its unjust enrichment claim makes clear it is seeking "damages," not just equitable relief. *See* FAC ¶ 601.

for the at-issue drugs. *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1083 (N.Y. App. 2001) (holding plaintiffs' payment of premiums triggered the statute of limitations under § 349 where plaintiffs alleged the defendants' "deceptive practices induc[ed] unrealistic expectations of . . . performance to fully offset premiums"). Because more than three years have elapsed since any alleged injury, the claims are time-barred.

The County cannot save its claims under any tolling doctrine. First, "[n]o discovery rule is applicable to section 349 claims." *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 462 (S.D.N.Y. 2014) (quotation marks omitted). Second, because the County was well aware of any alleged fraud by at least 2017 and fails to offer any explanation for waiting until now to bring suit, its claims of fraudulent concealment are unavailing.

## IV.  THE INDIRECT-PURCHASER RULE BARS THE COUNTY'S RICO CLAIMS.

The indirect-purchaser rule provides an independent basis to dismiss the County's RICO claims. In *Illinois Brick*, the Supreme Court announced a bright-light rule that only direct purchasers may sue under antitrust laws. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745-46 (1977). "[I]ndirect purchasers who are two or more steps removed from the antitrust violator in a distribution chain may not sue." *Apple Inc. v. Pepper*, 139 S. Ct. 1514, 1521 (2019).

Although the rule originated in the antitrust context, it applies equally to RICO claims. Consistent with the general rule that antitrust principles apply in RICO cases, *Holmes v. Sec. Inv. Prot. Corp.*, 503 U.S. 258, 268 (1992); *see Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1104 (2d Cir. 1988) ("Clayton Act principles of accrual apply equally to civil RICO actions."), the majority of federal courts to consider the issue—including in cases alleging similar "schemes" to inflate insulin prices—have held *Illinois Brick*'s bar on indirect-purchaser suits applies to RICO claims. *In re Insulin Pricing Litig.*, 2021 WL 5980629, at *8 (D.N.J. Dec. 17, 2021) (collecting cases); *Harris Cnty., Tex. v. Eli Lilly & Co.*, 2020 WL 5803483, at *12 (S.D. Tex. Sept. 29, 2020)

(declining "to follow the minority rule" and holding "that indirect purchasers [like Harris County] lack standing under RICO"); *MSP Recovery Claims, Series, LLC v. Sanofi Aventis U.S. LLC*, 2019 WL 1418129, at \*14 (D.N.J. Mar. 29, 2019) (dismissing RICO claims under indirect-purchaser rule where plaintiffs claimed "injury by virtue of inflated prices of their downstream purchase").

The County is not a direct purchaser of insulin.  Under the 2006 Sponsor Agreement, CVS Caremark merely processed prescription claims from pharmacies on behalf of persons covered under the County's prescription drug plan and promptly invoiced the County, which agreed to reimburse CVS Caremark within 48 hours.  Doc. 137-1 §§ III(D), (E), VII(A).  Thus, at most, the County reimbursed CVS Caremark for the County's beneficiaries' prescriptions for insulin.  That does not make the County a direct purchaser of insulin or CVS Caremark a distributor of insulin.

The County initially maintained that prescription drugs are distributed one of two ways: "(1) from manufacturer to wholesaler (distributor), wholesaler to pharmacy, and pharmacy to patient;" or (2) from manufacturer to mail-order pharmacy to patient." FAC ¶ 264.  In its First Amended Complaint, the County added a third alleged distribution chain whereby drugs are distributed "from manufacturer to mail-order pharmacy, mail-order pharmacy to self-insured payor, and then self-insured payor to patient." *Id.*  But the existence of this imagined third category is directly refuted by the Sponsor Agreement, under which prescriptions were "mailed to Covered Persons," not to the County. Doc. 137-1, Ex. B(B).  The only materials potentially "distribut[ed] to Sponsor" were informational brochures and enrollment forms.  *Id.* at Ex. B(A).

Accordingly, wholesalers and pharmacies are the only entities that could possibly be "direct purchasers" of at-issue drugs with any connection to the 2006 Sponsor Agreement.  The County cannot avoid this conclusion by creatively claiming "it paid CVS Caremark for the at-issue

drugs" (FAC ¶ 116), when, in reality, it paid CVS Caremark (over 10 years ago) "to *reimburse* pharmacies for the drugs utilized by [the County's] beneficiaries." *Id.* ¶ 270 (emphasis added).

The County is in the same position as the plaintiffs in *Hale v. Stryker Orthopaedics*, 2009 WL 321579, at *4 (D.N.J. Feb. 9, 2009).  In *Hale*, three patients who underwent knee implants sued the implant manufacturers for allegedly orchestrating an illegal kickback scheme that artificially inflated the coinsurance amount the patients paid for their surgeries.  *Id.* at *3.  The indirect-purchaser rule, however, barred their RICO claims because the patients did not allege "that they purchased the joints used in their knee replacement surgeries directly," and "in the chain of distribution [stood] several actors, including the hospitals performing the joint surgeries and [patients'] insurers."  *Id.* at *3-4.  Just as the *Hale* plaintiffs' "co-payment alone d[id] not allow them to stand in the shoes of a direct purchaser for standing purposes," the County's reimbursements to CVS Caremark do not allow them to stand in the shoes of wholesalers and pharmacies.  *Id.*; *see also In re Insulin Pricing Litig.*, 2019 WL 643709, at *13 (D.N.J. Feb. 15, 2019) (dismissing RICO claims for lack of standing where the plaintiffs claimed "injury by virtue of inflated prices of their downstream purchase.").

Even assuming there is a "co-conspirator exception"[9] to the indirect-purchaser rule, it could not save the County's claims.  The broader version of that exception, which the Fourth and Ninth Circuits rejected, "allocate[s] to the first non-conspirator in the distribution chain the right to collect 100% of the damages."  *Laumann v. Nat'l Hockey League*, 907 F. Supp. 2d 465, 482 (S.D.N.Y. 2012) (citing *Paper Sys. Inc. v. Nippon Paper Indus.*, 281 F.3d 629, 632 (7th Cir. 2002)).

---

[9] The Second Circuit has not adopted the exception, and the Supreme Court has prohibited "an unwarranted and counterproductive exercise to litigate a series of exceptions" to the indirect-purchaser rule.  *Kansas v. UtiliCorp United, Inc.*, 497 U.S. 199, 217 (1990); *see also Harris Cnty., Tex. v. Eli Lilly & Co.*, 2022 WL 479943, at *10 (S.D. Tex. Feb. 16, 2022).

In those circumstances, there is "no danger of duplicative recovery" and "no need to apportion [an] overcharge because it was not passed on to the consumers through any other level in the distribution chain." *Arizona v. Shamrock Foods Co.*, 729 F.2d 1208, 1213-14 (9th Cir. 1984).

The County is not the first non-conspirator in the chain. The wholesalers and pharmacies are both outside the alleged conspiracy and upstream from the County, which precludes application of the co-conspirator exception just like it precludes the County from being a direct purchaser.

Because the at-issue drugs were acquired through "non-conspiring 'middlemen,'" the co-conspirator exception (assuming one exists) does not save the County from *Illinois Brick*'s bright-line rule against indirect purchaser suits. *Drug Mart Pharm. Corp. v. Am. Home Prod. Corp.*, 2002 WL 31528625, at \*3 (E.D.N.Y. Aug. 21, 2002). *Drug Mart Pharmacy* is illustrative because the County is analogous to the plaintiff-pharmacies in that case. *Id.* at \*1. There, the pharmacies alleged that wholesalers and manufacturers established an industry-wide scheme that required pharmacies to pay inflated prices for brand-name prescription drugs ("BNBDs"). *Id.* at \*1. The claims against the wholesalers were dismissed due to insufficient evidence of a conspiracy between wholesalers and manufacturers. *Id.* Without that hook, the pharmacies' claims against the manufacturers for overpayment failed because "*Illinois Brick* barred the plaintiffs from recovering any damages based on BNPDs purchased through wholesalers." *Id.* at \*5. Because the County does not claim that wholesalers joined the alleged pricing scheme, its RICO claims similarly fail.

## V.  THE COUNTY FAILS TO PLEAD THE ELEMENTS OF A RICO CLAIM.

A RICO plaintiff has a twofold pleading burden. First, the plaintiff must allege a substantive violation under the RICO statute, 18 U.S.C. § 1962. *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 83 (2d Cir. 2015). To do so, the plaintiff must show a defendant engaged in "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (quoting *DeFalco v. Bernas*, 244 F.3d

286, 306 (2d Cir.2001)).   Second, the plaintiff must allege that the substantive RICO violation caused injury to the plaintiff's business or property.   *Id.*   The challenged conduct must be both the "but-for" and proximate cause of the plaintiff's claimed financial injury.   *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).   The County has not pled facts supporting even one of these requirements, never mind all of them.

### A.   The County Has Not Alleged Predicate "Racketeering Activity" of Mail and Wire Fraud under Rule 9(b)'s Heightened Pleading Requirements.

The County predicates its RICO claims on mail and wire fraud but fails to plead particularized facts supporting its fraud allegations.   The elements of mail and wire fraud "are (i) a scheme to defraud (ii) to get money or property (iii) furthered by the use of interstate mail or wires."   *Williams*, 889 F.3d at 124 (quotation marks omitted).   The first element "requires a showing of '(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations.'"   *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 362 (S.D.N.Y. 2014).   Thus, to state a claim for mail or wire fraud, a complaint must contain a "particularized allegation of an underlying 'scheme to defraud' animated by a material misrepresentation."   *Williams*, 889 F.3d at 125.   Here, the Complaint contains no such particularized allegation.

### 1.   The County has not plausibly alleged that CVS Caremark participated in a scheme to defraud the County or intended to do so.

First, the County has not alleged the existence of a scheme to defraud.   According to the First Amended Complaint, the County authorizes PBMs to negotiate with Manufacturer Defendants to obtain reduced prices for prescription drugs on its behalf.   *See* FAC ¶¶ 17, 409.   PBMs (or third parties, like WellPoint) then negotiate discounts for their clients through formulary rebates.   *See id.* ¶¶ 17, 355.   The County's contracts with PBMs, including CVS Caremark, delineate the percentage of such rebates that PBMs must pass through to the County.   *See id.* ¶¶

465-66; Doc. 137-1, § VIII.   Nothing prohibits PBMs from receiving other fees from manufacturers, especially those to which the County specifically agreed in the contracts.  *See, e.g.*, FAC ¶ 394; Doc. 137-1, § III(F) (CVS Caremark administrative fees for its services); § VIII(C) (WellPoint administrative fees).

Like the plaintiff in *Schnell v. Conseco, Inc.*, the County essentially takes issue with how it assumes PBMs have exercised their right to negotiate with the Manufacturer Defendants on their own behalf.  43 F. Supp. 2d 438, 445 (S.D.N.Y. 1999).  But "the fact remains that there is 'nothing deceptive . . . about the exercise of an express contractual right.'"  *Id.* (alternation in original).  Because the County has not adequately alleged a scheme to defraud, its RICO allegations fail.

Second, the First Amended Complaint fails to plausibly allege that CVS Caremark had the requisite fraudulent intent.  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993) ("A complaint alleging mail and wire fraud must plead facts that give rise to a strong inference that the defendant possessed fraudulent intent.").  Allegations of ill intent "must provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent." *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 413 (E.D.N.Y. 2017) (quoting *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995)).  A party may satisfy the fraudulent-intent prong "by either (1) alleging a motive for committing fraud and a clear opportunity for doing so or (2) identifying circumstances indicating conscious behavior by the defendant." *Id.* (quotation marks and alterations omitted).  The County has done neither.

First, the "'only motive' ascribed to Defendants is a generalized profit motive that could be imputed to any company, and thus has been consistently rejected as a basis for inferring fraudulent intent." *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009); *see also Flexborrow LLC v. TD Auto Fin. LLC*,

255 F. Supp. 3d 406, 424 (E.D.N.Y. 2017) (holding allegations that defendant had an "economic incentive" were insufficient under Rule 9(b)).  Second, the Manufacturer Defendants exclusively control the list prices for the at-issue drugs.  *See, e.g.*, FAC ¶¶ 12, 17, 265-67, 419 ("The Manufacturer Defendants knew that *their* artificially inflated list prices were not remotely related to the net price they received for the at-issue drugs . . . ." (emphasis added)).  Accordingly, CVS Caremark did not have an "opportunity" to carry out the alleged fraud, in any event.

Finally, although the County alleges PBMs benefited from higher list prices (FAC ¶¶ 18, 24, 317, 351), it does not allege that the Manufacturer Defendants increased list prices at PBMs' direction, nor could it.  All the County has alleged is that PBMs have a business relationship with the Manufacturer Defendants, who allegedly artificially inflated the list price.  *Id.* ¶¶ 300, 303. "The existence of such a relationship, without more, is not enough to establish fraudulent intent on the part of" CVS Caremark.  *Town of Islip*, 245 F. Supp. 3d at 415.  The County's speculation that PBMs were aware the Manufacturer Defendants were purportedly "artificially and arbitrarily" inflating their list prices (*id.* ¶¶ 22, 317, 412), is similarly insufficient to show "conscious behavior" by CVS Caremark, *Flexborrow LLC*, 255 F. Supp. 3d at 424.

### 2.    The County fails to provide particularized facts necessary to plausibly allege CVS Caremark made an actionable misrepresentation.

The Complaint also fails to identify any material misrepresentations.  "Instead, the complaint contain[s] sweeping and general allegations of mail and wire fraud directed at all the defendants rather than connecting the alleged fraud to the individual defendants." *Flexborrow LLC*, 255 F. Supp. 3d at 421 (quotation marks omitted).  Setting aside the County's undifferentiated allegations that the "PBMs" made unidentified "misrepresentations," the only remaining alleged representations are annual reports, press releases, congressional testimony, and statements to investors or media where CVS Caremark discussed its efforts to manage costs.  None

18

of these is actionable as fraud.  The alleged material misrepresentations the County cherry-picked

from these materials are:

- "[I]n April 2019, CVS Caremark president Derica Rice stated, 'Over the last three years . . . CVS Caremark has helped our clients save more than $141 billion by blunting drug price inflation, prioritizing the use of effective, lower-cost drugs and reducing the member's out-of-pocket spend.'"  FAC ¶ 324; Am. RICO Stmnt. at 17.

- "Defendant CVS Caremark has for the past decade consistently stated that its design and administration of formularies are aimed at reducing the costs and improving the safety, effectiveness and convenience of prescription drugs."  FAC ¶ 428.

- "CVS Caremark has further stated that it maintains an independent panel of doctors, pharmacists and other medical experts to review and approve the selection of drugs based on safety and efficacy for inclusion on one of Caremark's template formularies and that CVS Caremark's formularies lower the cost of drugs."  *Id*.

- "In a public statement issued in November 2010, CVS Caremark represented that it was focused on diabetes to 'help us add value for our PBM clients and improve the health of plan members . . . a PBM client with 50,000 employees whose population has an average prevalence of diabetes could save approximately $3.3 million a year in medical expenditures.'"  *Id*. ¶ 429.

- "In 2010, Andrew Sussman, Chief Medical Officer of CVS Caremark stated on national television that 'CVS is working to develop programs to hold down [diabetes] costs.'"  *Id*. ¶ 429; Am. RICO Stmnt. at 18.

- "In a public statement issued in November 2012, CVS Caremark represented that formulary decisions related to insulin products 'is one way the company helps manage costs for clients.'"  FAC ¶ 429.

- "CVS Caremark's Chief Policy and External Affairs Officer testified during the April 2019 hearings that, CVS Caremark 'has taken a number of steps to address the impact of insulin price increases. We negotiate the best possible discounts off the manufacturers' price on behalf of employers, unions, government programs, and beneficiaries that we serve.'"  *Id*.

- "In its 2017 Drug Report, CVS Caremark stated that the goal of its pharmacy benefit plans is to ensure 'that the cost of a drug is aligned with the value it delivers in terms of patient outcomes . . . in 2018, we are doing even more to help keep drugs affordable with our new Savings Patients Money initiative.'"  *Id*. ¶ 430.

- "Larry Merlo, head of CVS Caremark sounded a similar refrain in February 2017: 'Any suggestion that PBMs are causing prices to rise is simply erroneous.'"  *Id*. ¶ 431.

These statements, which merely describe PBMs' roles in the pharmaceutical market and CVS Caremark's efforts in its capacity as a PBM, are far too general to constitute fraud. *See, e.g.*, *Sanchez v. ASA Coll., Inc.*, 2015 WL 3540836, at *9 (S.D.N.Y. June 5, 2015) ("'[O]pinions about [a defendant's] business as well as 'expression[s] of corporate optimism' . . . do not give rise to a fraud claim."). And the County's summary assertion that statements were fraudulent does not satisfy its burden to "*explain* why the statements were fraudulent." *Schlesinger v. Schlesinger*, 2007 WL 9706976, at *8 (E.D.N.Y. Feb. 8, 2007) (emphasis added). "Thus, to the extent Plaintiff[] allude[s] to a false representation, [it has] failed to provide sufficient detail to satisfy Rule 9(b)." *Bongiorno v. Baquet*, 2021 WL 4311169, at *22 (S.D.N.Y. Sept. 20, 2021).

## B.     The County Has Not Alleged that Any RICO Acts Caused Its Alleged Injury.

The County claims that it relied on the alleged misrepresentations in paying for the at-issue diabetes medications. *See* FAC ¶¶ 476, 503. This conclusory assertion, however, is inconsistent with the County's allegations. As discussed, the First Amended Complaint and the 2006 Sponsor Agreement show the County understood—and even negotiated—the payment structure. *See* FAC ¶ 355; Doc. 137-1, § VIII(C); *see also* Doc. 137-1, § XV(F) ("Each party acknowledges that this Agreement was freely and voluntarily negotiated and entered into."). The County's apparent dissatisfaction with the contracts it negotiated does not constitute fraud. The County's allegations "do not rise to the level of fraudulent activity required for the application of RICO." *Brookdale Univ. Hosp.*, 2009 WL 928718, at *7; *see also Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, 2013 WL 3943267, at *9 (S.D.N.Y. July 31, 2013) (dismissing RICO claims where "allegations in the [c]omplaint that purport to plead predicate criminal acts sufficient to establish a cause of action under RICO 'amount merely to a breach of contract claim'").

## C.      The County Has Failed to Plead a RICO Enterprise.

The County also has failed to plausibly allege the element of a RICO "enterprise." According to the Complaint, there are six association-in-fact enterprises—three consisting of CVS Caremark and each Manufacturer Defendant, and three consisting of Express Scripts and each Manufacturer Defendant.  FAC ¶ 513.  RICO associations-in-fact must contain "three structural features: (1) a shared purpose; (2) relationships among the associates; and (3) 'longevity sufficient to permit these associates to pursue the enterprise's purpose.'"  *D'Addario v. D'Addario*, 901 F.3d 80, 100 (2d Cir. 2018) (quoting *Boyle v. United States*, 556 U.S. 938, 946 (2009)).  In other words, defendants "must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes."  *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (quotation marks omitted).  A plaintiff must plead specific facts; "conclusory naming of a string of entities" is insufficient.  *Id.*

The County's allegations do not support an inference that a single PBM-Manufacturer enterprise existed, let alone six separate enterprises.  Consistent with its other allegations, the County impermissibly "lump[s] all the Defendants together in an attempt to manufacture an enterprise."  *Aerowest GmbH v. Freitag*, 2016 WL 3636619, at *4 (E.D.N.Y. June 28, 2016).  "Such allegations based on group pleadings are inadequate, 'especially under Rule 9(b)'s heightened pleading standard.'"  *Petroff Amshen LLP v. Alfa Rehab PT PC*, 2021 WL 960394, at *11 (E.D.N.Y. Mar. 15, 2021), *aff'd*, 2022 WL 480475 (2d Cir. Feb. 17, 2022).  That alone is reason enough to dismiss the County's RICO claim.

But the County's enterprise allegations are insufficient for two additional reasons.  First, the County fails to allege any facts demonstrating CVS Caremark and any of the Manufacturer Defendants functioned as a unit that was "separate and apart" from the alleged "Insulin Pricing Scheme."  *See United States v. Turkette*, 452 U.S. 576, 583 (1981).  Instead, the County conflates

its obligation to allege an enterprise with its burden to plead a pattern of racketeering activity and "seeks to support the existence of an association-in-fact enterprise by pointing to the defendants' shared purpose" of obtaining increased profits. *Jordan v. Tilzer*, 2022 WL 16544335, at *2 (2d Cir. Oct. 31, 2022).

Second, the County fails to allege that CVS Caremark "acted on behalf of the enterprise as opposed to on behalf of [itself] in [its] individual capacit[y], to advance [its] individual self-interests." *Petroff*, 2021 WL 960394, at *10 (quotation marks omitted). Read in the light most favorable to the County, the alleged predicate acts all concern the PBMs' management of their own affairs, not their participation in the affairs of a separate criminal enterprise.

### D.   The County's RICO Conspiracy Claim Fails.

In the absence of any viable underlying claim, the Court's conspiracy claim under § 1962(d) must also fail. *Flexborrow LLC*, 255 F. Supp. 3d at 424; *Crabhouse of Douglaston Inc. v. Newsday Inc.*, 801 F. Supp. 2d 64, 89 (E.D.N.Y. 2011) ("Any claim for conspiracy under § 1962(d) necessarily fails where the underlying substantive claim is insufficiently pled.").

## VI.   THE COUNTY HAS NO STANDING TO ASSERT ITS NYGBL CLAIM, NOR HAS IT SUFFICIENTLY ALLEGED THE CLAIM'S ELEMENTS.

New York GBL § 349 does not cover derivative claims like the ones the County alleges. *Blue Cross and Blue Shield of N.J, Inc. v. Philip Morris USA Inc.*, 818 N.E.2d 1140, 1143 (N.Y. 2004). In rejecting a third-party payor's attempt to use § 349 to recover for increased medical costs due to allegedly deceptive acts, the New York Court of Appeals emphasized that third-party payors "cannot sidestep their traditional remedy of subrogation and sue directly for derivative injuries using a statute that creates a cause of action for a person directly injured." *Id.* at 1146.

Like the third-party payor in *Blue Cross*, any injury suffered by the County was indirect because it was entirely derivative of injuries allegedly suffered by persons covered under the

County's health plan who purchased the at-issue drugs. *See Voters for Animal Rts. v. D'Artagnan, Inc.*, 2021 WL 1138017, at *8 (E.D.N.Y. Mar. 25, 2021) (applying *Blue Cross* to hold that consumers, not the plaintiff NGO, suffered direct injury from the defendant's misleading representations because the plaintiff's additional expenses "only occur if consumers are first misled and deceived by [the d]efendants' conduct."); *see also City of New York v. Smokes-Spirits.Com, Inc.*, 911 N.E.2d 834, 838 (N.Y. App. Div. 2009) (holding City "failed to establish standing . . . because its claimed injury, in the form of lost tax revenue, [was] entirely derivative of injuries that it alleges were suffered by misled consumers"). Accordingly, the County lacks standing to bring a § 349 claim because its injuries are not cognizable under the statute.[10]

Even if the County could assert a claim under the statute, its claim would fail. *First*, as discussed, the claim is subject to a three-year statute of limitations, *Graham v. HSBC Mortg. Corp.*, 2019 WL 3066399, at *5 (S.D.N.Y. July 12, 2019), and is time-barred. *Second*, "to establish a violation of Section 349, the plaintiff must prove the defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result." *Chery v. Conduent Educ. Servs., LLC*, 581 F. Supp. 3d 436, 449 (N.D.N.Y. 2022). But, the County has not alleged any actionable material misrepresentations. *See supra* Section V(A)(2).

## VII.    THE COUNTY'S UNJUST ENRICHMENT CLAIM FAILS.

"[T]he presence of an express contract ordinarily requires a plaintiff to bring a claim for breach of contract, not unjust enrichment." *Conn. Gen. Life Ins. Co. v. Biohealth Labs., Inc.*, 988 F.3d 127, 133 (2d. Cir. 2021); *Richards v. Direct Energy Servs., LLC*, 915 F.3d 88, 105 (2d. Cir.

---

[10] As discussed, although the County tries to label itself as a "payor/purchaser" of at-issue drugs (FAC. ¶ 473), the Complaint demonstrates the County did not purchase such drugs from CVS Caremark. *See supra* Section IV. The County reimbursed CVS Caremark for the County's beneficiaries' prescriptions for insulin. FAC ¶ 270. Accordingly, the County did not "suffer an injury independently of the consumers' injury." *Voters for Animal Rts.*, 2021 WL 1138017, at *8.

2018) ("[A]n express contract between the parties precludes recognition of an implied-in-law contract governing the same subject matter." (quotation marks omitted)); *Pilarczyk v. Morrison Knudsen Corp.*, 965 F. Supp. 311, 323 (N.D.N.Y. 1997).  Because the County has admittedly contracted with CVS Caremark and other PBMs since 2006, *see* FAC ¶ 404, the County has not, and cannot, plausibly allege any kind of quasi-contractual claim.

## VIII. THE COURT SHOULD DISMISS ALL CLAIMS AGAINST CAREMARK'S CORPORATE PARENT AND UNINVOLVED AFFILIATE.

Caremark's corporate parent (CVS Health) and uninvolved affiliate (CVS Pharmacy) should be dismissed from this action.  The County does not plausibly allege misconduct by CVS Health; it claims only that it owns certain PBM subsidiary entities, shares interlocking directorships, directs overarching company policy, and profits from the alleged Manufacturer-PBM "scheme."  FAC ¶¶ 80, 108.  "It is a general principle of corporate law 'deeply ingrained in our economic and legal systems' that a parent corporation . . . is not liable for the acts of its subsidiaries."  *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and quotation marks omitted).  In New York, "such liability can never be predicated solely upon the fact of a parent corporation's ownership of a controlling interest in the shares of its subsidiary."  *Billy v. Consol. Mach. Tool Corp.*, 412 N.E.2d 934, 941 (N.Y. 1980).  Because the County has alleged insufficient facts demonstrating the PBM entities are alter egos of CVS Health, the claims against CVS Health must be dismissed.  *Mississippi ex rel. Fitch v. Eli Lilly & Co.*, No. 21-CV-674 (S.D. Miss. Aug. 15, 2022), slip op. at 14-16 (concluding plaintiff failed to allege facts supporting veil piercing as to PBM's parent and affiliates); *In re EpiPen Direct Purchaser Litig.*, 2021 WL 147166, at *22 (D. Minn. Jan. 15, 2021) (dismissing claims against PBMs' corporate parents where plaintiffs failed to tie public statements of parents to alleged scheme); *Moeckel v. Caremark Rx Inc.*, 385 F. Supp. 2d 668, 674 (M.D. Tenn. 2005) (dismissing PBM's parent from suit).

In addition, the allegations against CVS Pharmacy are "insufficient to plausibly plead [its] involvement in the alleged" scheme, as another federal court recently found based on nearly identical allegations. *See Mississippi ex rel. Fitch v. Eli Lilly & Co.*, 2022 WL 18401603, at *5 (S.D. Miss. Aug. 29, 2022) (dismissing CVS Pharmacy in another case about alleged "Insulin Pricing Scheme").  Beyond alleging CVS Pharmacy is a parent or affiliate of certain PBM subsidiaries, the County only alleges that CVS Pharmacy operates retail pharmacies and provides retail pharmacy services.  FAC ¶¶ 88-94.  But the County has not pled any misconduct by *retail pharmacies*.  The Complaint divides the defendants into just two categories—"PBM Defendants" and "Manufacturer Defendants."  *Id.* ¶¶ 4-5.  The Complaint goes on to categorize CVS Pharmacy as a "PBM Defendant," but only by lumping it together along with CVS Health and several subsidiary entities as "CVS Caremark."  *Id.* ¶ 109.  The County never alleges CVS Pharmacy had any involvement in the alleged PBM-Manufacturer conduct the County contends amounted to the scheme.  *Id.* ¶ 11.  The State alleges only that CVS Pharmacy retained the difference between the acquisition costs for the drugs at issue and the amounts received from payors.  *Id.* ¶ 117. But it is standard practice for pharmacies (and indeed all business) to retain the difference between the amount at which a product is purchased and the amount for which it is sold—and the State does not allege otherwise. The allegation that CVS Pharmacy was paid for drugs that it dispensed and its services in connection therewith, *like all retail pharmacies*, is insufficient to support a plausible inference that CVS Pharmacy was involved in the alleged scheme.  The County has not stated a plausible claim against CVS Pharmacy or CVS Health, and the Court should dismiss all claims against them.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss with prejudice the County's First Amended Complaint against the CVS Caremark Defendants.

Dated: April 14, 2023

Respectfully submitted,

_____
Cynthia E. Neidl (Bar Roll No. 513737)
**GREENBERG TRAURIG, LLP**
54 State Street, Sixth Floor
Albany, New York 12207
Tel: (518) 689-1400
Fax: (518) 689-1499
neidlc@gtlaw.com

Enu Mainigi (admitted *pro hac vice*)
Craig Singer (admitted *pro hac vice*)
R. Kennon Poteat III (admitted *pro hac vice*)
A. Joshua Podoll (admitted *pro hac vice*)
**WILLIAMS AND CONNOLLY LLP**
680 Maine Avenue, SW
Washington, DC 20024
Tel: (202) 434-5000
Fax: (202) 434-5029
emainigi@wc.com
csinger@wc.com
kpoteat@wc.com
apodoll@wc.com

*Attorneys for CVS Health Corporation, CVS Pharmacy, Inc., Caremark RX, LLC, CaremarkPCS Health, LLC, and Caremark, LLC*